**In re Ronald Gary WATTS; In re Yee Kome Kathy Watts, Debtors,**

**Phillip J. Wolfson, Appellant,**

v.

**Ronald Gary Watts; Yee Kome Kathy Watts, Appellees.**

**No. 00–55207.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 2001.

Filed Aug. 6, 2002.

J. Edward Switzer, Jr., Vista, CA, for the appellant.

Brian M. Mahoney, San Diego, CA, for the appellees.

Before: O'SCANNLAIN and PAEZ, Circuit Judges, and KING, District Judge.*

## OPINION

PAEZ, Circuit Judge.

Phillip J. Wolfson, a judgment creditor, appeals the Bankruptcy Appellate Panel's ("BAP") decision affirming the cancellation of his judgment lien on debtors Ronald Gary Watts's and Yee Kome Kathy Watts's (collectively, "Debtors") declared homestead. At the time Wolfson recorded his abstract of judgment, the value of the preexisting lien on Debtors' homestead, together with the homestead exemption, exceeded the fair market value of Debtors' real property. The bankruptcy court canceled Wolfson's judgment lien in an avoidance proceeding pursuant to 11 U.S.C. § 522(f) under the rationale of *Jones v. Heskett (In re Jones )*, 106 F.3d 923 (9th Cir.1997).

In *Jones,* we held that, under California Code of Civil Procedure ("CCP") § 704.950(c), a judgment creditor's lien does not attach to a declared homestead unless surplus equity exists in the homestead at the time the creditor records an abstract of judgment. After *Jones,* two California appellate courts rejected our interpretation of section 704.950(c) and con-

---

* The Honorable Samuel P. King, Senior United States District Judge for the District of Ha-   wai'i, sitting by designation.

cluded that a judgment creditor is entitled to surplus equity that accrues after the abstract of judgment is recorded. In light of the intervening California authority, which the California Supreme Court would likely follow, we overrule *Jones.* Accordingly, we reverse and remand.

## I. Factual and Procedural History

In 1994, Debtors recorded a declaration of homestead, which protected $75,000 of equity in their principal residence from execution by creditors. CCP §§ 704.710(c) (defining homestead), 704.730(a). In 1995, Wolfson recorded an abstract of judgment against Debtors' real property for $38,752.47. At the time Wolfson recorded the abstract of judgment, the sum of the debt on the first deed of trust and the homestead exemption exceeded the fair market value of Debtors' home. Thus, there was no surplus equity at that time to satisfy the judgment.

When Debtors filed a Chapter 7 bankruptcy petition in 1998, however, there was surplus equity. At that time, the fair market value of the house was $295,000 and the debt on the first deed of trust was $188,000. Thus, there was $32,000 in surplus equity unencumbered by the first deed of trust and the homestead exemption ($295,000—$188,000—$75,000 = $32,000).

In 1999, Debtors moved to avoid Wolfson's judgment lien in the bankruptcy court pursuant to 11 U.S.C. § 522(f).[1] Following *Jones*'s interpretation of section 704.950(c), the bankruptcy court found that Wolfson's judgment lien had not attached and could never attach to Debtors' resi-

dence because there was no surplus equity in the residence when Wolfson recorded the abstract of judgment. Accordingly, the bankruptcy court canceled Wolfson's lien under § 522(f). The bankruptcy court, however, expressed its disapproval of the result, explaining that it agreed with two subsequent California appellate court opinions, *Smith v. Merrill,* 64 Cal.App.4th 94, 75 Cal.Rptr.2d 108 (Ct.App.1998), and *Teaman v. Wilkinson,* 59 Cal.App.4th 1259, 69 Cal.Rptr.2d 705 (Ct.App.1997), both of which disagreed with *Jones*'s interpretation of section 704.950(c).

On appeal, the BAP agreed with the bankruptcy court that it could not "cast off the bonds imposed by *Jones.*" The BAP reasoned that the California Supreme Court, which had not had the opportunity to interpret section 704.950(c), could conceivably disagree with the California appellate court rulings in *Smith* and *Teaman.* Accordingly, the BAP affirmed the bankruptcy court's ruling.

This appeal followed.

## II. Standard of Review

■■■ We review de novo the BAP's legal conclusions. *Murray v. Bammer (In re Bammer),* 131 F.3d 788, 792 (9th Cir. 1997) (en banc). We also review de novo decisions regarding stare decisis. *Baker v. Delta Air Lines, Inc.,* 6 F.3d 632, 637 (9th Cir.1993).

## III. Discussion

### A. The California Homestead Exemption in Federal Bankruptcy Law

Federal bankruptcy laws provide debtors with various exemptions, which exclude

---

1. 11 U.S.C. § 522(f)(1) states in pertinent part:

    A debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ..., if such lien is—

    (A) a judicial lien[.]
    Section 522(f)(2)(A) provides a formula for calculating to what extent, if any, a lien impairs a debtor's ability to exempt property from the bankruptcy estate.

certain property from the bankruptcy estate. *Kendall v. Pladson (In re Pladson),* 35 F.3d 462, 464 (9th Cir.1994); 11 U.S.C. § 522(d). Pursuant to 11 U.S.C. § 522(b)(1), California opted out of the federal exemptions and enacted its own exemptions. CCP § 703.130; *Little v. Reaves (In re Reaves),* 285 F.3d 1152, 1155 (9th Cir.2002).

A California debtor in bankruptcy must elect between two sets of exemptions under California law, one which applies to debtors generally and the other which applies to debtors in bankruptcy. CCP § 703.140(a); *Farrar v. McKown (In re McKown),* 203 F.3d 1188, 1189 (9th Cir. 2000). The homestead exemption available to judgment debtors, CCP § 704.730, is more generous than the exemption that applies to debtors in bankruptcy, *id.* § 703.140(b)(1). Here, prior to filing for bankruptcy, Debtors recorded a declaration of homestead available to judgment debtors, thereby entitling Debtors to a $75,000 homestead exemption, *id.* § 704.730(a), which remained effective after they filed their bankruptcy petition.[2]

After filing for bankruptcy, Debtors sought to avoid Wolfson's judgment lien pursuant to 11 U.S.C. § 522(f) on the ground that it impaired their homestead exemption. To determine whether or to what extent Wolfson's judgment lien could be avoided under § 522(f) because it impaired Debtors' state-law homestead exemption, the bankruptcy court had to (1) apply California law to determine whether Wolfson's lien attached to Debtors' residence, and (2) if the lien attached, determine under federal bankruptcy law whether or to what extent the lien impaired Debtors' homestead exemption. *See Wiget v. Nielsen (In re Nielsen ),* 197 B.R. 665,

667–68 (B.A.P. 9th Cir.1996); *see also Bank of Am. Nat'l Trust & Sav. Ass'n v. Hanger (In re Hanger),* 217 B.R. 592, 594–95 (B.A.P. 9th Cir.1997) (holding that the bankruptcy court must determine the extent to which a lien impairs·the exemption and that only that amount must be avoided). We address only the first inquiry here.

### B. Attachment of a Judicial Lien on a Declared Homestead Under California Law

Prior to 1982, if a homeowner recorded a declaration of homestead in California, the California homestead exemption protected the entire value of the residence. *Jones,* 106 F.3d at 926. Thus, no judgment lien could attach, and a creditor's only option· to enforce his judgment was to seek a judicial sale of the property. *Id.* In 1982, however, the California Legislature enacted the Enforcement of Judgments Law, CCP §§ 680.010–724.260, which amended the declared homestead provisions. Pursuant to section 704.950, judgment liens could now attach to declared homesteads if there was surplus equity in excess of the total amount of liens and encumbrances and the homestead exemption. Section 704.950 provides in pertinent part:

(a) Except as provided in subdivision[ ] ... (c), a judgment lien on real property ... does not attach to a declared homestead if both of the following requirements are satisfied:

(1) A homestead declaration describing the declared homestead was recorded prior to the time the abstract or certified copy of the judgment was recorded to create the judgment lien.

(2) The homestead declaration names the judgment debtor or the spouse of

---

**2.** There is also a "separate and distinct" automatic, non-declared homestead exemption, which is not relevant here. *Katz v. Pike (In re Pike),* 243 B.R. 66, 69 70 (B.A.P. 9th Cir. 1999); CCP § 704.720; *see also Wynns v. Wilson (In re Wilson),* 90 F.3d 347, 350 (9th Cir.1996).

the judgment debtor as a declared homestead owner.

. . .

(c) A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following: (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien.

(2) The homestead exemption set forth in Section 704.730.[3]

In *Jones,* without the benefit of any California cases to guide our interpretation of section 704.950(c), we addressed whether a judgment lien could attach to a declared homestead if there was no surplus equity at the time the abstract of judgment was recorded. We held that a judgment creditor's lien attaches only if (1) surplus equity exists at the time the creditor records the abstract of judgment, or (2) the creditor executes on the judgment, thereby creating a lien that has a two-year life. 106 F.3d at 927. Thus, under *Jones,* even if surplus equity accrues after a creditor records an abstract of judgment, the judgment creditor, confronted with a bankruptcy petition, is not entitled to any surplus equity.

We reasoned in *Jones* that the California homestead exemption laws were designed to prevent individuals from losing their homes, and thus the homestead laws should be liberally construed in favor of homesteaders. *Id.* at 925, 927. We reviewed the history of the 1982 legislative amendments to the homestead statutes as reflected in the Comment of the California

Law Revision Commission, 16 Cal. L. Revision Comm'n Reports 1438 (1982) ("Comment"). The Comment explained that judgment liens do not attach to property that is subject to a prior homestead declaration, but that, similar to the law prior to the 1982 amendments, a judgment creditor could reach any equity value in excess of the homestead exemption by levy of execution on the property. *Jones,* 106 F.3d at 926. We specifically noted that the Comment "was not revised to reflect the addition of subdivision (c) to Section 704.950[.]" *Id.* Thus, we concluded that subsection (c) was an "afterthought" and that it "carve[d] out a narrow exception to the general and long-standing California rule that judgment liens do not attach to a declared homestead." *Id.* Judge Ferguson dissented for several of the reasons later adopted by the California appellate courts, discussed below.

Under *Jones,* Wolfson's judgment lien, created by recording the abstract of judgment, did not and could never attach to Debtors' residence because there was no surplus equity when he recorded the abstract of judgment. The only way that Wolfson could reach any surplus equity would be to rerecord the abstract of judgment when surplus equity accrued.

After *Jones,* the California Court of Appeal in *Smith,* 75 Cal.Rptr.2d at 111–13, and *Teaman,* 69 Cal.Rptr.2d at 707–09, disagreed with our interpretation of section 704.950(c), holding that a judgment creditor is entitled to surplus equity that accrues in a declared homestead after an abstract of judgment is recorded.[4] We find *Smith* and *Teaman* persuasive.

---

3. The homestead exemption does not apply to a judgment lien for child, family, or spousal support. CCP § 704.950(b).

4. Although the California appellate courts disagreed as to when a judgment lien attaches—whether it attaches at the time the abstract of judgment is recorded, *Smith,* 75 Cal.Rptr.2d

at 112, or when surplus equity accrues, *Teaman,* 69 Cal.Rptr.2d at 709—this issue need not be resolved here because it is undisputed that surplus equity had accrued by the time Debtors filed their bankruptcy petition. Thus, under either approach, the judgment lien would have attached by that date.

■ Both California courts rejected *Jones*'s interpretation of section 704.950(c), noting that it leads to an anomalous result. It requires judgment creditors to "continually rerecord" their abstracts of judgment to ensure that their lien attaches if surplus equity has accrued, and it "cripple[s ] the doctrine of priority of liens." *Teaman*, 69 Cal.Rptr.2d at 708 (citing *Jones*, 106 F.3d at 928 (Ferguson, J. dissenting)). This continual rerecording of an abstract of judgment conflicts with CCP § 2897, which grants priority to liens based on the date that they are recorded. The interpretation of section 704.950(c) by the *Smith* and *Teaman* courts correctly avoids "giving much greater significance to the act of recordation than what it was designed for—to provide notice." *Jones v. Heskett (In re Jones )*, 180 B.R. 575, 580 (B.A.P. 9th Cir.1995), *overruled by Jones*, 106 F.3d 923.

The California courts' interpretation of section 704.950(c) also follows from the statutory text. The clause "at the time the abstract of judgment ... is recorded" modifies only "[a]ll liens and encumbrances," but not "the amount of any surplus." Thus, the surplus equity may be calculated at a later date, such as at the time the judgment debtor files a bankruptcy petition. *Jones*, 106 F.3d at 928 (Ferguson, J. dissenting).

Two other statutory provisions, CCP §§ 697.340 and 704.800(a), support the *Smith* and *Teaman* interpretation of section 704.950(c). *See Teaman*, 69 Cal. Rptr.2d at 708–09. Section 697.340 provides that, "[e]xcept as provided in Section 704.950," a judgment lien attaches to both present and future interests in real property. Thus, a creditor can reach property that the debtor did not own when the abstract of judgment was recorded, such as future increases in the equity value of real property. *Id.* (citing *Kinney v. Vallentyne*, 15 Cal.3d 475, 124 Cal.Rptr. 897,

541 P.2d 537, 539 (Cal.1975)). Accordingly, despite the "exception for section 704.950, none of the provisions of section 704.950 can be reasonably read to prevent section 697.340 from applying to an increase in equity in homestead property." *Id.*

*Teaman* also relied on section 704.800(a), which provides that homesteaded property may not be sold if there is no surplus equity. If a creditor attempts to execute on his judgment lien and the homestead is not sold because of lack of surplus equity, the judgment creditor must wait one year before attempting to subject the property to another judicial sale. CCP § 704.800(a). Section 704.800(a) demonstrates the legislature's "intent that [if] a judgment creditor['s] ... lien d[oes] not initially attach because there [i]s no surplus equity when [his] abstract of judgment [i]s recorded," the creditor has later opportunities to execute on the lien if equity develops. *Teaman*, 69 Cal.Rptr.2d at 709.

Had the bankruptcy court here followed the rationale of *Smith* and *Teaman* instead of *Jones*, it would have concluded that Wolfson's lien had attached by the time Debtors filed their Chapter 7 bankruptcy petition, and thus the lien could not have been avoided on this basis. We adopt that approach here.

■■ We are bound to follow *Smith* and *Teaman* absent convincing evidence that the California Supreme Court would reject the interpretation of section 704.950(c) by these two courts. *See Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1464–65 (9th Cir.1983). In reexamining our interpretation of section 704.950(c) in light of *Smith* and *Teaman*, we conclude that, if confronted with the issue, the California Supreme Court would follow the rationale of *Smith* and *Teaman*

and not the approach that we adopted in *Jones.* As we explained in *Owen:*

> These recent decisions by the California courts of appeal that have appeared subsequent to our *Commercial Union* decision require us to reconsider the proper interpretation of § 877. Our interpretation in *Commercial Union* was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect. The recent decisions from the courts of appeal cast a new light on the question. *In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently.*

*Id.* (internal quotation marks and citations omitted) (emphasis added) (holding that convincing evidence existed that the California Supreme Court would not follow the state appellate courts' decisions); *Stephan v. Dowdle,* 733 F.2d 642, 642 (9th Cir.1984) (concluding that an earlier panel decision was "no longer binding ... and must be overruled" because the Arizona Court of Appeals had subsequently interpreted the relevant Arizona statute to the contrary); *see also TwoRivers v. Lewis,* 174 F.3d 987, 996 (9th Cir.1999) (applying federal law to decide the issue in the case but explaining that, had the panel applied state law, it would be bound by a state appellate court opinion that conflicted with an earlier panel opinion absent convincing evidence that the state supreme court would disagree

with the appellate court); *FDIC v. McSweeney,* 976 F.2d 532, 535–36 (9th Cir. 1992) (explaining that, in the absence of an intervening California Supreme Court opinion concerning the relevant issue or an appellate court opinion "at odds with" the prior Ninth Circuit opinion, the three-judge panel was "bound by our prior decisions interpreting state as well as federal law"). Accordingly, as in *Stephan,* 733 F.2d at 642, we overrule *Jones* and hold, consistent with the intervening California case law, that a judgment creditor is entitled to surplus equity that accrues in a declared homestead after an abstract of judgment is recorded.[5]

REVERSED AND REMANDED.

O'SCANNLAIN, Circuit Judge, concurring in the judgment:

I find myself in the perplexing position of being bound by a precedent counseling that I need not be bound by a precedent.

Although there is much in the court's fine opinion with which I agree entirely—I would have no quarrel with its analysis of California law were the issue one of first impression—I am profoundly troubled by the notion of reaching this result by our "overruling," as a three-judge panel, the precedent set by an earlier panel in *Jones v. Heskett (In re Jones ),* 106 F.3d 923 (9th Cir.1997).

I

It is a bedrock principle of our court that the published decision of one three-judge panel binds every other panel,[1] from

---

**5.** Because we conclude that Wolfson's lien attached, upon remand the bankruptcy court must determine to what extent, if any, the lien impairs the exemption and must be avoided under 11 U.S.C. § 522(f). *See Hanger,* 217 B.R. at 594–95.

**1.** Indeed, our three-judge panels are bound even before the litigants themselves are

bound. Even when a judgment is not yet enforceable, the opinion remains circuit precedent unless and until a majority of judges vote to take it en banc, at which point it may not be cited. 9th Cir. Gen. Order 5.5(d); *see, e.g., Newdow v. U.S. Cong.,* 292 F.3d 597 (9th Cir.2002), *judgment purportedly "stayed" by one-judge order* (9th Cir. June 27, 2002) (No. 00–16423).

that day forward.[2] Put another way, one panel may not overrule another; the power to overrule is confided to the en banc court, and the en banc court alone.[3] Panels may distinguish; they may question; they may deploy virtually any of the other verbs in the *Shepard's* vocabulary. But they may not overrule.

There are exceptions. We need not convene the en banc court when the Supreme Court reverses us directly. Nor must we do so when that Court, in reviewing a case from another circuit, knocks the props out from under one of our decisions. *See, e.g., Le Vick v. Skaggs Cos., Inc.,* 701 F.2d 777, 778 (9th Cir.1983); *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 495 (9th Cir.1979); *see also, e.g., Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104 (9th Cir.2002) (noting that *Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182 (9th Cir.1998), has likely been implicitly overruled). This practice represents our confidence, as a court, that our three-judge panels are able to tell the difference between a Supreme Court ruling that rips one of our decisions from the *Federal Reporter* altogether and one that leaves at least a hanging chad behind. But it also represents our confidence that the Supreme Court stands ready to review and to reverse us when necessary (a proposition for which, I think, no citation is required).

We also permit our panels to use the big eraser when the earlier decision is based on state law that has demonstrably changed in the intervening period. Herein lies the rub. A proposition's demonstrability depends on the audience's receptivity. How skeptical must we ask our panels to be when they are urged to exercise the power to overrule in light of a supervening change in the underlying law?

To my mind, a panel must not act in contravention of our precedent without being highly certain of its authority to do so. And that certainty is not easily obtained when, as here, the alleged change in state law comes from case law rather than statutory law.

When it is a state *statute* that has changed, the question is much simpler, particularly in this age of formal codification.[4]

In most cases, we need no longer hunt through yellowing volumes of the California state session laws; either the state legislature has altered the statutory section relied upon in the prior decision, or it has not.

But with case law, whether pure common law or judicial glosses on statutory law, the question is more difficult. We can be certain that state *case law* is an authoritative expression of state *law* only when it comes from the state's court of last resort.[5]

---

2. And occasionally backward: because a panel's decision in any given case is controlling over others *submitted for decision* afterward, occasionally a case is submitted first but decided second, necessitating the amendment or withdrawal of the case submitted second but decided first. *See* 9th Cir. Gen. Order 4.1(a).

3. Although, in this circuit, the en banc court that exercises that authority in the first instance is a limited, eleven-judge panel rather than the full court, *see* 9th Cir. R. 35–3, the decision to *convene* the en banc court is made by a majority of the court's active, nonrecused circuit judges, as the governing statute mandates. 28 U.S.C. § 46(c); Fed. R.App. P. 35. And participation on the en banc court is

specifically restricted to judges of this court (and, with one exception, *see* 28 U.S.C. § 26(c)(1), to judges in regular active service).

4. "Formal codification" refers to the consolidation of legislative enactments under readily indexed subject headings, rather than an attempt to reduce all substantive law to the form of code law to the exclusion of common law. Gunther A. Weiss, *The Enchantment of Codification in the Common Law World,* 25 Yale J. Int'l L. 435, 517 & n. 418 (2000).

5. Certainty that state case law is an authoritative and *enduring* expression of state law is at its highest when a state court of last resort construes a statute, rather than the state con-

Anything less leaves room for doubt—including a decision by an intermediate state appellate court, which, though perhaps weightier authority than a trial court's ruling, an attorney general's opinion, or a learned commentator's pronouncement, is inevitably less than conclusive. And it seems to me that where there is room for doubt, we must stay our erasers.

## II

For the contrary position, the court's opinion relies primarily on *Owen ex rel. Owen v. United States*, 713 F.2d 1461 (9th Cir.1983). *Supra*, at 1082–83. I do not disagree with the court's discussion of *Owen*, but I find the reasoning of that case troubling. *Owen* relied on our cases requiring that we "follow the decision of the intermediate appellate courts of the state unless there is 'compelling evidence that the highest court of the state would decide differently.'" *Owen*, 713 F.2d at 1464 (quoting *Andrade v. City of Phoenix*, 692 F.2d 557, 559 (9th Cir.1982) (per curiam)) (internal quotation marks omitted). The *Owen* court reasoned that because we must presumptively follow the decisions of state intermediate appellate courts when we decide questions of first impression, we must also *revisit* our decisions on the same basis. I do not think that the one proposition follows from the other.

Consider a state with an intermediate appeals court whose two divisions do not bind one another with their decisions. Suppose the two divisions simultaneously reach opposite conclusions on the identical question of law. Suppose further that the issue is so thorny and the two decisions so well-reasoned that, despite the diametrically opposed outcomes, the impartial observer can find one more persuasive than the other only by a hairsbreadth—the winner by a preponderance, but not by clear and convicing evidence. Yet we require "convincing evidence" before disregarding the decision of an intermediate appellate court. *Owen*, 713 F.2d at 1465. In this example, neither decision is weighty enough to justify disregarding the other. A panel of this court confronted with this situation, but blessed with a prior, on-point Ninth Circuit precedent, would likely sigh with relief and apply the law of the circuit, even if one or both of the state cases postdated the earlier panel's decision. The law in our court and those bound by our rulings remains unchanged, predictable, *reliable* until the state's highest court tells us otherwise.

I believe this salutary predictability justifies following circuit precedent even when a state intermediate appellate court subsequently issues a contrary opinion. One never knows, after all, when the other shoe will drop and another state court will take the opposite position. California maintains a dispersed intermediate appellate court, with six independent districts. Cal. Gov't Code § 69100. Are we to revisit our rulings each time the weight of authority shifts? (If the First District decides on holding A, the Second and Third hand down holding not-A the next year, and the Fourth, Fifth, and Sixth weigh in with holding A the following year, will we have to undertake three overrulings, with a fourth when the California Supreme Court finally settles on outcome not-A?) I would prefer to keep to a minimum the frequency with which we receive a new datum, revise our view of state law accordingly, and reverse ourselves.

stitution or the common law, due to the customary rule that stare decisis is most strongly applicable in statutory construction cases, *see, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). But the possibility that the state's highest court will one day overrule itself does not make its extant rulings any less authoritative for our purposes, if not the historians'.

But can we not ascertain from our own reading of the law how likely it is that this parade of horribles will actually march in any given case? To do so here, we would have to evaluate whether the *Jones* panel's decision is so out of line with California law that no other Court of Appeal is likely to adopt it. And it is precisely that sort of on-the-merits reexamination of prior precedent that we are supposed to leave to the en banc court.[6]

### III

One could certainly argue that the mere fact of a panel opinion should not be given this near-conclusive weight. After all, the three judges (or two) who arrived at the precedential holding in question may or may not have had the benefit of thorough briefing, immersion in the pertinent state law, or a nutritious and balanced breakfast. *Cf. Payne v. Tennessee,* 501 U.S. 808, 834, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Scalia, J., concurring) ("[W]hat would enshrine power as the governing principle of this Court is the notion that an important constitutional decision with plainly inadequate rational support *must* be left in place for the sole reason that it once attracted five votes.").

But that is not our usual rule—and for good reason. Stare decisis is of particular importance in federal courts. We are, after all, courts of limited jurisdiction that do not enjoy the general common lawmaking authority that many state courts do. And the fact that federal judges are not lawmakers is inextricable from the fact that we enjoy the constitutional armoring that secures our independence—appointment (rather than election), life tenure, and sala-

ry protection. *Cf. Chisom v. Roemer,* 501 U.S. 380, 400, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991); *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 59 n. 10, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (plurality opinion). Our status ill suits us to lawmaking; indeed, the Framers' expectation that we would not be making law secured us our judicial independence in the first place.

Stare decisis provides crucial reassurance on the latter point: it demonstrates that our decisions represent more than the subjective preferences of the concurring judges. *The Federalist No. 78,* at 471 (Alexander Hamilton) (Clinton Rossiter ed. 1961) ("To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents which serve to define and point out their duty in every particular case that comes before them...."); *see also, e.g., Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 652, 15 S.Ct. 673, 39 L.Ed. 759 (1895) (White, J., dissenting) ("The fundamental conception of a judicial body is that of one hedged about by precedents which are binding on the court without regard to the personality of its members."). In the courts of appeals, we three-judge panels bind ourselves rigorously to this mast and allow only the en banc court to release us. I find it unfortunate that *Owen* and *Stephan v. Dowdle,* 733 F.2d 642 (9th Cir. 1984), have departed from this rule. *See supra* at 1083.

But depart they have, and I must respect those holdings, for they cannot be dismissed as dicta. *See, e.g., Spears v. Stewart,* 283 F.3d 992, 1006 (9th Cir.2002)

---

**6.** I should add that one way to reduce the incidence of this difficult situation is to exercise the utmost restraint in publishing precedential decisions in diversity cases. However, that tool is not available to us in cases like this one, where federal law incorporates or intersects with state law. We must apply the same *Erie*-derived principles to ascertain the state law, but we must also give precedential effect to our application of the federal law in some cases, thus creating federal court precedent on state law that *Erie* principles may later undermine.

(Kozinski, J., statement concerning the denial of the petitions for rehearing en banc) ("[S]o long as the issue is presented in the case and expressly addressed in the opinion, that holding is binding and cannot be overlooked or ignored by later panels of this court or by other courts of the circuit."). Nor have they been overruled.

Thus, reluctantly applying the *Owen* rule, I agree with the majority's conclusion that *Jones* is no longer viable and must be rejected—although, for the reasons detailed above, I decline to use the term "overruled." Accordingly, I concur in the judgment.