NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 5 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHRISTAL MOSTEIRO, | No. 22-16780 |
| Plaintiff-Appellee, | D.C. No. 2:19-cv-00593-MCE-DB |
| v. | |
| ZACHARY SIMMONS, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., District Judge, Presiding

Submitted August 21, 2023**
San Francisco, California

Before: BUMATAY, KOH, and DESAI, Circuit Judges.
Dissent by: Judge BUMATAY

Zachary Simmons appeals the district court's denial of his motion to dismiss

Christal Mosteiro's 42 U.S.C. § 1983 action.[1] Simmons moved to dismiss on the

---

*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

**      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[1] The district court certified its order for interlocutory appeal under 28 U.S.C. § 1292(b), and we granted permission for Simmons to appeal.

ground that the action was time-barred by the statute of limitations, arguing that Mosteiro was not entitled to tolling under California Civil Procedure Code § 352.1(a) because her claims accrued while she was a pre-trial detainee in county jail. Our review is de novo, *Aragon v. Federated Department Stores, Inc.*, 750 F.2d 1447, 1449–50 (9th Cir. 1985), and we affirm.

1. Adhering to our precedent in *Elliott v. City of Union City*, 25 F.3d 800, 801 (9th Cir. 1994), we conclude that § 352.1(a) extends to a pre-trial detainee in county jail who is held in continuous custody. Section 352.1(a) tolls the statute of limitations when an individual is "imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life." *Elliott* considered "whether being continuously incarcerated prior to arraignment constitutes being 'imprisoned on a criminal charge' within the meaning of" § 352(a)(3), the predecessor statute to the current § 352.1(a).[2] 25 F.3d at 802. Concluding that it does, *Elliott* held that § 352(a)(3) "covers all post-arrest custody," so long as a plaintiff was in continuous custody from when his claim accrued. *Id.* at 803.

---

[2] There is no difference between the two statutes that is material to this case because § 352.1(a) "utiliz[es] the same statutory wording" at issue here. *Brooks v. Mercy Hosp.*, 204 Cal. Rptr. 3d 289, 293 (Cal. Ct. App. 2016). The only distinction is that § 352.1(a) added the phrase "not to exceed two years," thereby limiting tolling to two years. *Id.* at 291, 293. Thus, California courts have looked to interpretations of § 352 in construing § 352.1(a). *Id.* at 290, 293.

After *Elliott*, however, one California Court of Appeal held that § 352.1(a) applies solely to plaintiffs "serving a term of imprisonment in the state prison," not to pre-trial detainees in county jail. *Austin v. Medicis*, 230 Cal. Rptr. 3d 528, 531 (Cal. Ct. App. 2018). To reach that conclusion, *Austin* relied on the statute's legislative history, which it turned to after finding the statutory language ambiguous. *Id.* at 538. *Austin* rejected *Elliott* in a passing footnote, observing only that, because *Elliott* "predated the enactment of [§] 352.1," it "did not have the benefit of the legislative findings on this subject." *Id.* at 537 n.4.

"When interpreting state law, federal courts are bound by decisions of the state's highest court." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir. 2001) (citation omitted). Where, as here, there is no applicable California Supreme Court decision, we "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.* (citation omitted). "However, where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts." *Id.* (citation omitted); *see also T-Mobile USA Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 586 (9th Cir. 2018) ("An intermediate state appellate court decision is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other

3

persuasive data that the highest court of the state would decide otherwise." (internal quotation marks and citation omitted)).

Convincing evidence exists that the California Supreme Court, in interpreting § 352.1(a), would not follow *Austin*. First, *Austin*'s reasoning contravened fundamental rules of statutory interpretation under California law. *Cf. Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019) (concluding that there was "no reason" that the California Supreme Court would reject California Court of Appeal decisions that "provided a reasonable statutory interpretation"). "Statutory interpretation under California law begins with the words themselves, giving them 'their plain and commonsense meaning . . . .'" *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020) (quoting *Murphy v. Kenneth Cole Prods.*, Inc., 155 P.3d 284, 289 (Cal. 2007)).

In concluding that § 352.1(a) is ambiguous, *Austin* considered only the word "imprisoned," disregarding not just the phrase in which it is used ("imprisoned on a criminal charge"), but the immediately following clause in the same sentence ("or in execution under the sentence of a criminal court"). *See* 230 Cal. Rptr. 3d at 538. However, that this single word "isolated from its context is susceptible of more than one meaning" does not render it ambiguous. *Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 959 P.2d 265, 272 (Cal. 1998) (citation omitted). "[I]t is a 'fundamental principle of statutory construction (and, indeed, of language itself)

4

that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.'" *Super. Ct. v. Pub. Emp. Rels. Bd.*, 241 Cal. Rptr. 3d 554, 577 (Cal. Ct. App. 2018) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)).  California courts may not "delet[e]" or "read[] out" terms that the Legislature inserted.  *Golden State Boring & Pipe Jacking, Inc. v. Orange Cnty. Water Dist.*, 49 Cal. Rptr. 3d 447, 453 (Cal. Ct. App. 2006) (emphasis omitted).  "In the construction of a statute, . . . the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to . . . omit what has been inserted."  *Id.* (quoting Cal. Civ. Proc. Code § 1858).  Rather, the court must "giv[e] significance to every word, phrase, sentence, and part of an act."  *City of San Jose v. Super. Ct.*, 389 P.3d 848, 853 (Cal. 2017) (citation omitted).  As such, *Austin*'s construction of § 352.1(a) violated these rules by failing to interpret the phrase "imprisoned on a criminal charge" as a whole and in context.

By contrast, *Elliott* recognized that the phrase "imprisoned on a criminal charge" plainly encompasses pre-trial detention, referring to imprisonment "prior to conviction."  25 F.3d at 802 n.2.  *Elliott*'s interpretation of "criminal charge" accords with its "usual and ordinary meaning."  *Turner v. Victoria*, 532 P.3d 1101, 1106 (Cal. 2023).  When § 352.1(a) was enacted, Black's Law Dictionary defined "charge" as "[i]n a criminal case, the specific crime the defendant is accused of

committing. Accusation of a crime by a formal complaint, information or indictment." *Black's Law Dictionary* (6th ed. 1990); *see also Black's Law Dictionary* (11th ed. 2019) (defining "charge" as "[a] formal accusation of an offense as a preliminary step to prosecution . . . [a]lso termed criminal charge").

This ordinary understanding of "criminal charge" also comports with California case law interpreting this phrase. Applying § 352.1(a), the California Court of Appeal recognized that a plaintiff could "fac[e] criminal charges *while released on bail*," holding that such status does not constitute imprisonment under the statute. *Maddox v. Lake*, 2015 WL 4571550, at *4 (Cal. Ct. App. July 29, 2015) (emphasis added).[3] Similarly, in the context of another tolling statute, California Government Code § 945.3, the California Court of Appeal interpreted "criminal charge" to mean an "accusatory pleading" that precedes judgment and sentence. *McAlpine v. Super. Ct.*, 257 Cal. Rptr. 32, 35, 37 (Cal. Ct. App. 1989). Consequently, "criminal charges are 'pending' for purposes of [§] 945.3 until the date of judgment and sentence." *Id.* at 37.

In addition, *Austin* deviates from the "cardinal" rule that "a construction of a

---

[3] Although *Maddox* is an unpublished decision, "we may consider unpublished state decisions, even though such opinions have no precedential value," in determining whether *Austin* "accurately represents California law." *Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); *see also Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 681 n.12 (9th Cir. 2021) ("Although these decisions are unpublished with no precedential value, we may still consider them to interpret California law.").

statute which makes some words surplusage is to be avoided." *City of Huntington Park v. Super. Ct.*, 41 Cal. Rptr. 2d 68, 72 (Cal. Ct. App. 1995); *see also Brennon B. v. Super. Ct.*, 513 P.3d 971, 989 (Cal. 2022) ("We seek to avoid interpretations that render any language surplusage." (internal quotation marks and citation omitted)). *Austin*'s interpretation of "imprisoned on a criminal charge" to mean only a "term of imprisonment in the state prison," 230 Cal. Rptr. 3d at 542, would render superfluous the very next phrase in the same sentence: "in execution under the sentence of a criminal court for a term less than for life," Cal. Civ. Proc. Code § 352.1(a). *Cf. People v. Saibu*, 120 Cal. Rptr. 3d 84, 90 (Cal. Ct. App. 2011) (recognizing a definition of "term of imprisonment" as one that "must refer to the actual sentence imposed by the court" (quoting *People v. Riolo*, 655 P.2d 723, 725 (Cal. 1983))). Indeed, as *Elliott* reasoned, *Austin*'s reading of "imprisoned on a criminal charge" to exclude pre-trial detainees would make the statute "self-contradictory, since it refers to being held 'on a criminal charge,' i.e., prior to conviction." *Elliott*, 25 F.3d at 802 n.2. "It is the second phrase, 'in execution under sentence of a criminal court,' that covers post-conviction incarceration, i.e., confinement in an actual prison." *Id.*

Moreover, that the two phrases are connected by the disjunctive "or" further supports *Elliott*'s conclusion that they must "be given separate meanings." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also In re E.A.*, 234 Cal. Rptr. 3d

7

346, 356 (Cal. Ct. App. 2018) ("The plain and ordinary meaning of the word 'or,' when used in a statute, is to designate separate, disjunctive categories. The word 'or' suggests alternatives." (cleaned up)).

For all these reasons, § 352.1(a) is not ambiguous. "If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs." *Sprint Telephony PCS, L.P. v. Bd. of Equalization*, 189 Cal. Rptr. 3d 673, 681 (Cal. App. Ct. 2015) (citation omitted) (emphasis omitted). Because "[r]esort to legislative history is appropriate *only* where statutory language is ambiguous," *id.* (citation omitted), *Austin*'s reliance on the statute's legislative history to resolve any apparent ambiguity was unwarranted, *see* 230 Cal. Rptr. 3d at 592.

Even so, *Austin* failed to consider another prevailing purpose behind the tolling statute, as recognized by *Bledstein v. Superior Court*, 208 Cal. Rptr. 428 (Cal. Ct. App. 1984). There, the California Court of Appeal held that § 352 applied to a plaintiff who was imprisoned in a federal prison and then transferred to a federal halfway house.[4] *Id.* at 430, 439. In so holding, the court recognized

---

[4] *Austin*'s holding that § 352.1(a) applies only to state prison inmates is at odds with *Bledstein*. To be sure, in *Bledstein*, the plaintiff's claim accrued after he began serving his sentence, 208 Cal. Rptr. at 441, so the court was construing the clause "in execution under the sentence of a criminal court," *id.* at 439–40. By contrast, *Austin* purported to address only the phrase "imprisoned on a criminal charge." 230 Cal. Rptr. 3d at 542. In any event, if, as *Austin* found, the legislative history demonstrates that tolling was intended only to apply to state prison inmates,

8

that "with respect to retaining a tolling provision for prisoners, it would appear . . . the Legislature was motivated at least in part by a recognition of the practical, as well as the legal, difficulties prisoners face in instituting and prosecuting suits." *Id.* at 441 (cleaned up).

In contrast to *Austin*, *Elliott* took this purpose into account, explaining that "disability statutes are meant to protect those who are incapable of protecting themselves: they apply to prisoners in recognition of their more limited ability to investigate their claims, to contact lawyers and to avail themselves of the judicial process." *Elliott*, 25 F.3d at 803 (cleaned up). "For tolling purposes, there is little difference between being incarcerated pre-arraignment, pre-conviction or post-conviction: none of these forms of custody affords the prisoner a change in status with regard to his disability." *Id.*; *see also id.* at 802–03 (concluding that "[a] person held in police custody prior to arraignment is faced with the same limitations as someone in custody after arraignment" and "the purpose of disability statutes would be ill-served by creating an arbitrary distinction between pre- and post-arraignment incarceration").

In sum, considering "all available data," *T-Mobile USA Inc.*, 908 F.3d at 586 (citation omitted), we conclude that there is convincing evidence that the

then *Bledstein*'s extension of the statute to federal prisoners in federal halfway houses contradicts *Austin*'s conclusion.  Notably, *Austin* does not explain this incongruity with *Bledstein*.

9

California Supreme Court would interpret § 352.1(a) differently than *Austin*. Consequently, "[w]e continue to believe that [*Elliott*] . . . rightly predicts what the California Supreme Court will hold." *Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1466 (9th Cir. 1983).[5]

2.  Under *Elliott*, Mosteiro's claims were tolled by § 352.1(a) because they accrued while Mosteiro was a pre-trial detainee in county jail, and she was in continuous custody from that time until her release from imprisonment. The district court therefore correctly held that Mosteiro's 42 U.S.C. § 1983 action was timely.

**AFFIRMED.**

---

[5] Contrary to the dissent's suggestion, comity and federalism do not mean abdication. Decisions of the California Court of Appeal bind neither other panels of that court nor us. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). A California Court of Appeal's interpretation of a state statute "may afford guidance as to how the California Supreme Court would interpret [the statute]," but it "does not control our interpretation." *Am. Tower Corp. v. City of San Diego*, 763 F.3d 1035, 1047 (9th Cir. 2014). Thus, *Austin* does not relieve us of "our duty" as a federal court "to predict how the highest state court would decide the issue." *In re Kekauoha-Alisa*, 674 F.3d 1083, 1088 (9th Cir. 2012).

Equally wrong is the dissent's claim that we must defer to *Austin* even if it rests on a flawed statutory interpretation. Our court has squarely rejected that view. In *American Tower Corp.*, we held that "the text of the statute is 'persuasive data' that the California Court of Appeal misinterpreted" a statute. 763 F.3d at 1047. In that case, like here, the California Court of Appeal's interpretation "read[] out" a statutory phrase, violating the canon against surplusage. *Id.* at 1048. As a result, "[w]e d[id] not believe the California Supreme Court would do the same and therefore reject[ed] [the California Court of Appeal's] interpretation." *Id.* We do no more in this case.

*Mosteiro v. Simmons*, No. 22-16780
Bumatay, J., dissenting:

We face an interesting question here. When considering a question of California law, do we follow our own precedent on the question even if it conflicts with a more recent interpretation of the law by a California intermediate appeal court? As a matter of comity and federalism, we ordinarily follow an appellate state court's interpretation of state law. Because this case doesn't present unusual circumstances, I would do so here.

At issue is whether California's tolling statute for prisoners, California Code of Civil Procedure § 352.1, applies to pre-trial detainees. Back in 1994, we held that it does. *See Elliott v. City of Union City*, 25 F.3d 800, 801 (9th Cir. 1994) ("[W]e hold that [§ 352.1's predecessor statute] tolls the limitations period when the plaintiff has been in continuous custody, commencing at the time of his arrest[.]"). But more recently, a California Court of Appeal decision went the other way. *See Austin v. Medicis*, 230 Cal. Rptr. 3d 528, 597 (Cal. Ct. App. 2018) ("We hold . . . that a would-be plaintiff is 'imprisoned on a criminal charge' within the meaning of section 352.1 if he or she is serving a term of imprisonment in the state prison."). And the California Court of Appeal's decision was no drive-by opinion—it traces its analysis all the way to ancient Greece and to the English common law. *Id*. at 592. Since then, at least one other California appellate court has approved of *Austin*'s analysis

in an unpublished decision. *See People v. Cardoso*, 2018 WL 5603538, at *4 (Cal. Ct. App. 2018) (unpublished).

Unless we have "convincing evidence" that the California Supreme Court would reject an intermediate appellate court's interpretation, "[w]e are bound to follow" it. *In re Watts*, 298 F.3d 1077, 1082-83 (9th Cir. 2002); *see also Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 889 (9th Cir. 2021) ("[O]rdinarily[, we] accept the decision of an intermediate appellate court as the controlling interpretation of state law." (simplified)). And we follow the state court interpretation even if that means we must jettison our prior interpretation of the state law. *See Owen ex rel. Owen v. United States*, 713 F.2d 1461, 1465 (9th Cir. 1983) ("Our interpretation [of state law] was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect. The recent decisions from the courts of appeal cast a new light on the question." (simplified)).

And we don't reject a state court's interpretation of state law lightly. For example, we've declined to follow a state court's interpretation of state law when it was in "plain conflict" with the decision of another state court. *See Owen ex rel. Owen*, 713 F.2d at 1465. But when we have thought it highly likely that the highest state court would reject the intermediate court's statutory interpretation, we certified the question rather than give preference to our own interpretation. *See Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008). But bottom line: our

disagreement with a state court's interpretation on "a question of state law do[es] not constitute convincing evidence that the state supreme court would decide an issue differently." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 n.1 (9th Cir. 2007) (simplified). "This is especially true" when the California Supreme Court, like here, "has refused to review the lower court's decision." *State Farm Fire & Cas. Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir. 1989).

While I share some of the majority's concerns with *Austin*'s interpretive moves, our role is not to substitute our own judgment for the state court's. Even if we have doubts about *Austin*, "principles of federalism and comity weigh strongly in favor of following" it. *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 874 (9th Cir. 2021). We do not stand as a court of error correction over state courts. By not following *Austin*, we "place our court in the inappropriate position of independently determining the meaning of California [tolling] law." *Id*. And contrary to the majority's view, this isn't "abdication"; this is appropriate deference to state courts on a state law issue. Indeed, the majority offers no limiting principle to its aggrandized view of when we may overrule California intermediate appellate courts: if we disagree, then that's enough. But that's not what our precedent or Constitution requires.

Because the district court applied *Elliot* instead of *Austin*, I would reverse. I thus respectfully dissent.