[No. B105272. Second Dist., Div. One. Dec. 10, 1997.]

CHARLES TEAMAN et al., Plaintiffs, v.
HERBERT WILKINSON et al., Defendants and Appellants;
JONATHAN GOLDHILL et al., Third Party Claimants and Respondents.

**COUNSEL**

Suppa, Highnote & Lee, Jerry Michael Suppa and Samy S. Henein for Defendants and Appellants.

Francis J. Cunningham III and M. Michele Lines for Third Party Claimants and Respondents.

**OPINION**

**MASTERSON, J.**—Once a declaration of homestead has been recorded by a homeowner, an abstract of judgment recorded by a creditor will not attach as a judgment lien unless there is surplus equity in the home—i.e., a market value that is greater than the total of the homestead exemption and all encumbrances senior to the lien. (Code Civ. Proc., § 704.950, subd. (c).)[1] In this opinion, we address two questions relating to creditors' rights after a judgment lien has failed to attach upon recordation of the abstract of judgment due to lack of surplus equity: First, may the creditor force the sale of the homestead in satisfaction of the judgment lien if surplus equity accrues at some later time while the debtor owns the property? Second, may such a sale be forced after the debtor has voluntarily sold the property to a third party? We answer the first question in the affirmative and the second in the negative. As a consequence of our answer to the second question, we affirm a judgment granting a petition by third party owners to bar the forced judicial sale of property purchased by the third parties from judgment debtors at a time when the property had no surplus equity.

### BACKGROUND

The pertinent facts are not in dispute. In December 1993, Charles and Judith Teaman purchased residential property in the Woodland Hills section of Los Angeles for $365,000. The property was encumbered by two deeds of trust which secured loans totaling $328,500. In January 1994, the Teamans recorded a homestead declaration, which created a $75,000 homestead exemption on their behalf. The following June, Herbert and Dorothy Wilkinson, who had earlier obtained a $127,000 attorney's fees judgment for defending an action brought by the Teamans in San Diego Superior Court,

---

[1] Undesignated section references are to the Code of Civil Procedure.

recorded an abstract of that judgment with the Recorder's Office of Los Angeles County. (Teaman v. Wilkinson (Super. Ct. San Diego County, 1993, No. N43634).) In August 1994, the Teamans sold the property to Jonathan and Wendy Goldhill for $362,500. As part of that transaction, the Teamans paid off the existing loans and the Goldhills took out a loan on their own behalf for $262,500. No reference was made to the Wilkinsons' judgment lien in the Teaman-Goldhill transaction.

In late 1995, the Wilkinsons secured an order for the sale of the property in satisfaction of their judgment lien. (§ 704.740 et seq.) The Goldhills thereafter petitioned for a hearing to determine the validity of a third party claim. (§ 720.310 et seq.) In briefing on the issue, the Wilkinsons did not contest the Goldhills' assertion that there was no surplus equity in the property when it was owned by the Teamans. Indeed, they could not since the value of the property remained steady in the $360,000 range, and the total of the prior liens and the Teamans' homestead exemption at the time of sale was approximately $403,000. Rather, the Wilkinsons asserted that the property acquired surplus equity on which execution could be levied upon its purchase by the Goldhills. The Goldhills responded that the Wilkinsons were not entitled to force the sale of the property because no judgment creditor is ever entitled to the benefit of surplus equity that accrues after the creditor's abstract of judgment has been recorded. The Goldhills' pleadings raised as an alternative argument that, because there was no surplus equity in the property when it was sold by the Teamans, the judgment lien had been extinguished at the time of the sale.

The trial court accepted the Goldhills' first argument and ruled that the Wilkinsons were not entitled to a judicially ordered sale because once their judgment lien had failed to attach upon recordation, it could not attach at any time thereafter. On May 29, 1996, a judgment was filed which ordered that the levy on the property be released. The judgment further declared that the Goldhills owned the property free and clear of any claim by the Wilkinsons. This appeal followed.[2]

## DISCUSSION

The issues raised in this case involve the consideration of laws by which judgment liens are regarded as the highest form of security to a creditor (*Kinney* v. *Vallentyne* (1975) 15 Cal.3d 475, 478 [124 Cal.Rptr. 897, 541 P.2d 537]), but homesteads are nonetheless favored (*Lee* v. *Brown* (1976) 18 Cal.3d 110, 113 [132 Cal.Rptr. 649, 553 P.2d 1121]). Our analysis is governed by the Enforcement of Judgments Law, enacted in 1982 as sections

---

[2] A judgment determining a third party claim is appealable. (§ 720.420.)

680.010 through 724.260. (Stats. 1982, ch. 1364, pp. 5070-5235.) Based on this law, we conclude that the trial court reached the correct result, albeit for the wrong reason. As we shall explain, had any surplus equity accrued while the Teamans owned the property, the Wilkinsons would have been entitled to execute on it. However, once that property was sold at market value without any surplus value having accrued, the Wilkinsons no longer had the right to pursue the property so as to satisfy their judgment lien.[3]

1. *Creditors' Rights to Surplus Equity That Accrues While Homestead Is Owned by Debtor*

The California Constitution requires that "[t]he Legislature . . . protect, by law, from forced sale a certain portion of the homestead . . . ." (Cal. Const., art. XX, § 1.5.) A homestead is the principal dwelling in which a judgment debtor or the judgment debtor's spouse resides. (§ 704.710.) Typically, when two members of the same family unit reside in the same dwelling and are not over 65, the exemption amount is $75,000. (§ 704.730, subd. (a)(2), (3).)

A judgment lien on real property is created by recording an abstract of a money judgment with the county recorder. (§ 697.310, subd. (a).) Unless satisfied or released, the judgment lien continues until 10 years from the date of entry of the judgment, after which it may be renewed. (§ 697.310, subd. (b).) A judgment lien on real property does not automatically attach to real property on which a declaration of homestead has been recorded. (See § 704.950, subd. (a).) Instead, under section 704.950, subdivision (c): "A judgment lien attaches to a declared homestead in the amount of any surplus over the total of the following: [¶] (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment or certified copy of the judgment is recorded to create the judgment lien. [¶] (2) The homestead exemption set forth in Section 704.730."

 When the Wilkinsons recorded their abstract of judgment, the value of the Teamans' property was approximately $360,000, and the total of the two existing loans on the property ($328,500) and the Teamans' $75,000 homestead exemption was $403,500. There was thus no "surplus" to which the judgment lien could "attach[]" (§ 704.950, subd. (c)) "at the time the abstract of judgment . . . [was] recorded" (§ 704.950, subd. (c)(1)). In the Goldhills' view of the world, having failed to attach to the property when recorded, the lien ceased to have any value for all time. As noted, the trial court agreed. We disagree.

---

[3]We summarily reject the Wilkinsons' challenge to the validity of the Teamans' homestead exemption, finding that substantial evidence supports the conclusion that the exemption was valid.

The Enforcement of Judgments Law does not address the potential enforceability of a judgment lien that has failed to attach because of lack of surplus equity, nor has any California case addressed the issue. However, it was the key issue in a bankruptcy matter that yielded a two-to-one decision from the Ninth Circuit Bankruptcy Appellate Panel in favor of the creditor (*In re Jones* (B.A.P. 9th Cir. 1995) 180 B.R. 575 (*Jones I*)) and a two-to-one decision in favor of the debtor when the matter was heard in the Ninth Circuit (*In re Jones* (9th Cir. 1997) 106 F.3d 923 (*Jones II*)).

In *Jones*, a residence on which a homestead had been declared had no surplus equity when a creditor recorded its abstract of judgment, but had appreciated to the point that surplus equity existed when the homeowner filed a petition in bankruptcy. The issue before the bankruptcy court was whether that later-acquired surplus equity was protected from the creditor. The *Jones* courts approached the problem from the perspective of how a California court would construe the Enforcement of Judgments Law. (*Jones I, supra,* 180 B.R. at pp. 576, 578; *Jones II, supra,* 106 F.3d at pp. 924-925.) Utilizing that approach, which we also take in this opinion, a court's first task is to "ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statutes themselves . . . . [These words] must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) Also, whenever possible, the court's construction should seek to "avoid absurd or anomalous results." (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1221 [275 Cal.Rptr. 729, 800 P.2d 1159].)

In construing section 704.950, subdivision (c), the majority in *Jones I* and the dissent in *Jones II* focused on the practical consequences of the interpretation advanced by the Goldhills. As described above, that interpretation would forever prevent a judgment creditor from executing on a judgment debtor's homestead property if there were no surplus equity in the property at the time the creditor recorded its abstract of judgment. This would lead to an absurd result. For example, assume that A owns a home on which there are $75,000 in mortgages and a $75,000 homestead exemption. B and C win $10,000 judgments against A on the same date. B immediately

records his abstract of judgment against A. C records his abstract two years later. B and C later seek court orders to compel the sale of A's property. The court determines that when B recorded his abstract of judgment, A's property was worth $150,000, but that when C recorded his abstract, the value had increased to $170,000. Under the Goldhills' approach, C could execute on the property because it had surplus equity when C's abstract of judgment was recorded. But despite the existence of sufficient surplus equity to cover both judgments, B's lien would be worthless because there was no surplus equity to which it could attach when B's abstract was recorded.

The majority in *Jones I* noted that, in order to avoid the anomaly described in our example, creditors such as B would have to continually rerecord their abstracts of judgment in the hope that one of them might bear fruit by being recorded at a time when surplus equity had accrued in the judgment debtor's property.[4] (180 B.R. at p. 579.) The dissent in *Jones II* cogently observed that the Goldhills' construction would cripple the doctrine of priority of liens since the creditor that recorded its abstract of judgment second in time would be able to execute on the property but the creditor that recorded first would not. (106 F.3d at p. 928 (dis. opn. of Ferguson, J.); see Civ. Code, § 2897 ["different liens upon the same property have priority according to the time of their creation"].)

We see nothing in the dissent in *Jones I*, the majority in *Jones II*, or the Enforcement of Judgments Law itself that would support the proposition that a lien which does not attach when created ceases to exist for all practical purposes.[5] To the contrary, we share the view of the majority in *Jones I* and the dissent in *Jones II* that the adverse practical consequences of such a construction demonstrate that it should be avoided. Moreover, sections 697.340 and 704.800, which were not discussed in the *Jones* opinions, strengthen our conclusion that a judgment creditor may reap the benefit of after-acquired surplus equity.

Section 697.340 states in pertinent part: "Except as provided in Section 704.950: [¶] (a) A judgment lien on real property attaches to all interests in real property in the county where the lien is created (whether present or future, vested or contingent, legal or equitable) that are subject to enforcement of the money judgment against the judgment debtor . . . at the time the

---

[4]Of course, property that appreciates to create surplus equity can also decline in value and once again present nothing to which the judgment lien could attach.

[5]With characteristic felicity, Judge Ferguson concluded his opinion in *Jones II* by stating: "I therefore dissent, thankful that the majority opinion is not binding upon the state courts of California. [Citation.]" (106 F.3d at p. 928.)

lien was created. . . ." "If the creditor can thus reach wholly distinct parcels of property which the debtor did not even own when the abstract of judgment was recorded, a fortiori he can reach any and all increases in the value of the equity in the property owned by the debtor at the time of . . . recordation [of the abstract of judgment]. . . ." (*Kinney* v. *Vallentyne, supra,* 15 Cal.3d at p. 479.) Although section 697.340 contains an exception for section 704.950, none of the provisions of section 704.950 can be reasonably read to prevent section 697.340 from applying to an increase in equity in homestead property. A fortiori, when an increase in value of the property creates or increases surplus equity, the judgment creditor is entitled to reach this appreciation in satisfaction of its judgment.

Pursuant to sections 704.780, subdivision (b) and 704.800, subdivision (a), a court may not order the sale of homestead property nor may the property be sold at a court-ordered sale when there is no surplus equity in the property. Significantly, section 704.800, subdivision (a) further provides that if the homestead is not sold because of the lack of surplus equity, it "is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor *for a period of one year.*" (Italics added.) The italicized language can be read only as an expression of legislative intent that a judgment creditor whose lien did not initially attach because there was no surplus equity when its abstract of judgment was recorded be given additional opportunities to execute on the lien if surplus equity does develop. The creditor merely has to wait at least a year between each attempt to levy execution.

2. *Creditors' Rights Upon Transfer of Property With No Surplus Equity*

Although we have concluded that the Wilkinsons would have been entitled to the benefit of any surplus equity that accrued while the property was owned by the Teamans, it is uncontroverted that such surplus equity did not accrue. Instead, the Wilkinsons are seeking to execute on what they characterize as the "surplus equity" which was created when the Goldhills bought the property and recorded their own homestead declaration, but borrowed less to finance their purchase than the Teamans had borrowed. The question then becomes whether that voluntary transfer allowed the Wilkinsons to execute on that "surplus equity" to satisfy their judgment lien. We hold that it did not.

The centerpiece of the Wilkinsons' argument that their judgment lien was transferred to what became the Goldhills' residence is section 697.390,

which provides in pertinent part: "If an interest in real property that is subject to a judgment lien is transferred or encumbered without satisfying or extinguishing the judgment lien: [¶] (a) The interest transferred or encumbered remains subject to a judgment lien created pursuant to Section 697.310 in the same amount as if the interest had not been transferred or encumbered." In relying on this statute, the Wilkinsons fail to give appropriate meaning to the words "subject to" and "in the same amount." We note that if at the time of transfer the judgment lien created by recording an abstract of judgment (§ 697.310) had no value because there was no surplus equity to which it could attach (§ 704.950, subd. (c)), there would be nothing of value to which the transferred interest remained subject. Consequently, even if the Goldhills are considered to have taken "subject to" the Wilkinsons' lien, the Wilkinsons could not execute on the lien because it would be worthless.

Moreover, there is a provision of the Enforcement of Judgments Law which confirms that the Legislature did not intend that a transferee of property which has no surplus equity take the property subject to the judgment lien. Pursuant to section 704.960, subdivisions (a) and (b), when a declared homestead is voluntarily sold, the exempt proceeds of the sale under the homestead law remain exempt for up to six months if they are reinvested in a new homestead within that time. Once reinvested, the new homestead declaration has the same effect as if it had been recorded at the time the prior homestead declaration was recorded. (§ 704.960, subd. (b).) ▪ By "allow[ing] the owner of the homestead to substitute one family home for another without losing his exemption" (*Thorsby* v. *Babcock* (1950) 36 Cal.2d 202, 205 [222 P.2d 863]), section 704.960, subdivision (b) gives effect to " '[t]he object of all homestead legislation[, which is] to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors.' [Citation.]" (36 Cal.2d at p. 204.)

▪ The statutory interpretation urged by the Wilkinsons would render section 704.960 a nullity in a situation where the debtor's homestead is sold at a price that either does not create surplus equity or creates it in an amount that is inadequate to fully satisfy a judgment lien, but the amount is nonetheless sufficient to generate *non*surplus equity (i.e., equity that is equal to or less than the existing mortgages plus the seller's homestead exemption). This is because, absent some extraordinary circumstance, a buyer would agree to purchase property with a judgment lien in its chain of

title only if that lien were satisfied as a condition of the sale. However, the funds generated by the sale that would be available to pay the lien would be limited to the nonsurplus equity. Thus, the seller/debtor would be able to sell his residence only if he made payment in satisfaction of the lien with the exact same funds that the homestead exemption was designed to protect. Inasmuch as the purpose of section 704.960 is to facilitate the preservation of the homestead exemption by allowing its transfer from one residence to another, the Wilkinsons' interpretation of the law, which would require "exempt" funds to be used to pay a debt, runs afoul of the Legislature's intent.[6]

Finally, we note that California title insurance companies appear to have anticipated the result in this case. The record establishes that the Goldhills' title insurer did not include the Wilkinsons' abstract of judgment in its title report. ■ As stated in Ahart, California Practice Guide: Enforcing Judgments and Debts (The Rutter Group 1997) paragraph 6:1055.1, page 6E-62: "A title company may choose to ignore the recorded abstract and issue the new buyer a 'clean' title insurance policy (i.e., one not containing the creditor's lien) if it determines that (i) a homestead declaration was recorded before the creditor's lien was recorded; and (ii) no CCP § 704.950(c) surplus equity exists that can be used to satisfy the creditor's lien." (Italics omitted.) ■ While we agree with Ahart's further observation that it would be risky for a title company to exclude an abstract of judgment from its report if there were any question as to whether the property was being sold at its actual market value (*ibid.*), there seems to have been no such risk here. The property was bought by the Goldhills eight months after it was bought by the Teamans. The two purchases were at about the same price. Utilizing this price as the value, the Teamans' nonsurplus equity in the house (sales price minus mortgage amounts) was approximately $34,000—an amount far less than the Goldhills' $75,000 homestead exemption. Thus, the Goldhills' title insurer correctly interpreted the law when it determined that the Wilkinsons' abstract of judgment did not constitute a lien on the property once it had been purchased by the Goldhills.

---

[6]Nor are the judgment creditor's legitimate rights adversely affected by removing property from its reach upon voluntary transfer without surplus equity. In a situation where the seller/debtor does not reinvest the amount exempted in a new homestead within six months of the sale, the creditor is entitled to execute on these funds. Alternatively, if the surplus equity is invested in a homestead within the prescribed period, the judgment creditor stands in the same position with respect to the second residence as it previously stood with respect to the first. In other words, if surplus equity exists at the time the second residence is purchased, the judgment lien will attach to the surplus equity in the new property. If there is no surplus equity at the time of purchase but such equity later accrues, the judgment lien will attach at that time. And if surplus equity never accrues, the lien will never attach, but the judgment creditor will be in no worse a position than if the original residence had never been sold.

## DISPOSITION

The judgment is affirmed.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.