[No. B175067. Second Dist., Div. One. Aug. 25, 2005.]

TITLE TRUST DEED SERVICE COMPANY, Plaintiff, v.
ALVIN C. PEARSON et al., Defendants and Appellants;
TAYLOR BILLINGSLEA BAIL BONDS et al., Defendants and
Respondents.

170

**COUNSEL**

Law Offices of Lorna C. Washington and Lorna C. Washington for Defendants and Appellants.

Law Offices of F. James Feffer and F. James Feffer for Defendant and Respondent Taylor Billingslea Bail Bonds.

Sanders, Collins & Rehaste, Rita A. Rehaste, Roberta L. Cutsinger and Brian S. Edwards for Defendant and Respondent Heritage Rehabilitation Center.

**OPINION**

**VOGEL, J.**—*Spencer v. Lowery* (1991) 235 Cal.App.3d 1636 [1 Cal.Rptr.2d 795] holds that the *automatic* homestead exemption afforded by subdivision (b) of section 704.720 of the Code of Civil Procedure does not apply to the proceeds of a trustee's sale under a power of sale in a deed of trust because a trustee's sale is not based on a money judgment within the meaning of the Enforcement of Judgments Law (Code Civ. Proc., § 680.010 et seq).[1] Relying on subdivision (c) of section 704.950 (which applies only to a *declared* homestead), *Smith v. James A. Merrill, Inc.* (1998) 64 Cal.App.4th 94 [75 Cal.Rptr.2d 108] reaches the opposite conclusion with regard to a *declared* homestead. The dispute before us is about the allocation of a post-trustee's-sale surplus fund, with a property owner who had recorded a declared homestead challenging the trial court's refusal to acknowledge his homestead. We reverse.

## FACTS

### A.

In October 1997, Heritage Rehabilitation Center sued Alvin Pearson and his mother for money owed for nursing services. According to the allegations against Pearson, his mother had transferred her South Hobart Street residence to him without valuable consideration, and Pearson had accepted the transfer in aid of his mother's efforts to avoid payment of her debt to Heritage.

In December 1997, Pearson used the South Hobart Street property to secure a loan and executed a deed of trust encumbering the property. The deed is not in the record, and we do not know the identity of the beneficiary, but we do know that Title Trust Deed Service Company was (or later became) the trustee. As will appear, Pearson did not repay the loan.

In January 1998, Pearson recorded a declaration of homestead on the South Hobart Street property. (§ 704.920.) In April, Heritage obtained a default judgment against Pearson in the amount of $17,514.96. In May, an abstract of judgment was recorded. The judgment was not satisfied.

### B.

In July 2000, Pearson was arrested and charged with a crime (the nature of which is not disclosed by the record). Pearson entered a written bail bond

---

[1] All section references are to the Code of Civil Procedure.

agreement with Taylor Billingslea Bail Bonds, and as security gave Billingslea a deed of trust on the South Hobart Street property; a $25,000 bond was posted, and Pearson was released from custody. Pearson failed to appear when ordered, and Billingslea incurred expenses in an effort to apprehend him.

In January 2001, as indemnitor rather than as principal as before, Pearson entered into two agreements with Billingslea to obtain the release of two women who had been charged with crimes, Davetta Lashon Clark and Virginia Carroll Miller. As before, Pearson secured his indemnifications ($50,000 as to each woman) with deeds of trust on the South Hobart Street property. Both women failed to appear when ordered, and expenses were incurred by Billingslea in an effort to apprehend them.

## C.

On May 5, 2003, Title Trust Deed Service, acting on behalf of the beneficiary of the 1997 deed of trust, conducted a nonjudicial foreclosure sale of the South Hobart Street property. After payment to the beneficiary and payment of costs, there was a surplus of $99,667.75, and several claims were submitted to Title Trust Deed Service: (1) Pearson and his wife, Theresa Booth Pearson, claimed they were entitled to all the surplus funds; (2) Heritage Rehabilitation Center claimed it was entitled to recover the amount of its 1998 judgment against Pearson; and (3) Billingslea claimed he was entitled to recover the amounts owed by Pearson for the premiums and costs associated with the three bail bonds.

On May 23, Title Trust Deed Service filed this interpleader and declaratory relief action against Pearson, Theresa, Heritage, Billingslea and others who are no longer involved, and deposited the surplus funds into court. Answers were filed, and Billingslea filed a cross-complaint, to which answers were filed.

In December, Heritage and Billingslea filed motions for summary adjudication of the declaratory relief cause of action (Heritage) and summary judgment (Billingslea). Heritage presented evidence to establish its right to recover under its recorded abstract of the 1998 judgment against Pearson, and Billingslea presented evidence to establish his right to recover on the deeds of trust securing the bail bonds. Both motions were granted, and the trial court ultimately entered judgments payable from the surplus fund, $29,092.57 to Heritage, and $18,666.86 (plus costs and contractual attorneys' fees) to Billingslea.

Pearson and Theresa appeal from the judgments in favor of Heritage and Billingslea.

.

## DISCUSSION

### I.

The Pearsons contend the judgment in favor of Heritage is flawed because the trial court erred when it denied their motion to amend their answer to claim a homestead exemption, and because the judgment fails to recognize the homestead exemption. We agree.

### A.

The joint answer filed by the Pearsons in July 2003 raised half a dozen affirmative defenses but did not mention anything about a homestead exemption. About seven months later, in February 2004, the Pearsons filed a motion for leave to amend their answer to raise the homestead issue, stating that it had "recently been discovered that the [South Hobart Street property] was homesteaded on January 12, 1998." In a supporting declaration, Theresa said that, at the time she retained counsel to represent her and Pearson in this action, she "was not aware that the property had been [h]omesteaded." She said Pearson was incarcerated at that time, and she "was involved in a criminal matter in Grand Junction, Colorado." She said that "[s]ometime around the end of November," Pearson had told her "that he vaguely recalled signing a document in January 1998, and that the property may have been [h]omesteaded." She called the real estate broker who had drafted the homestead, then told her lawyer about it.

According to the lawyer representing the Pearsons, she was retained in June 2003, and sometime thereafter asked Theresa whether the property was homesteaded. In November, Theresa told her what she had learned, at which point the lawyer called the Los Angeles County Recorder's office to verify that a homestead had in fact been recorded on January 12, 1998. A proposed amended answer was filed with the motion for leave to amend, alleging that the homestead "protect[ed] $75,000 of the Pearson's interest" in the surplus fund.

The trial court denied the motion, finding that, because the proceeds of the sale were not exempt from execution to satisfy a money judgment (*Spencer v. Lowery, supra,* 235 Cal.App.3d at p. 1638), the surplus proceeds from the sale were not exempt and the proposed affirmative defense would fail as a matter of law. The trial court did *not* find the motion was untimely, or that an

order allowing the amendment would adversely affect any of the other parties.[2] In short, the court did not decide the motion in an exercise of its discretion but rather decided the legal issue on its merits. For this reason, our review is de novo.

## B.

■ "Homestead laws are designed to protect the sanctity of the family home against a loss caused by a forced sale by creditors. The homestead exemption itself does not have any effect on the liens created voluntarily by the property owners, nor does it have any effect on the claims of creditors secured by liens that have priority over the declaration of homestead. [Citation.] The homestead exemption ensures that insolvent debtors and their families are not rendered homeless by virtue of an involuntary sale of the residential property they occupy. Thus, the homestead law is not designed to protect creditors, but protects the home against creditors of the declarant, thereby preserving the home for the family. This strong public policy requires courts to adopt a liberal construction of the law and facts to promote the beneficial purposes of the homestead legislation to benefit the debtor. [Citations.]

■ "In California, a homestead exemption may be asserted two ways. First, a declaration of homestead may be recorded. (. . . § 704.920.) A recorded homestead protects the property from execution by certain creditors to the extent of the amount of the homestead exemption [now a maximum of $150,000]. [(§§ 704.730, 704.965.)] [Citation.] Because many California debtors failed to file homestead exemptions, the legislature in 1974 enacted legislation which created an 'automatic' homestead exemption. (. . . § 704.720.) This exemption need not be memorialized in a recorded home-stead declaration in order to be effective . . . . [Citations.]

■ "[T]he two exemptions are distinct protections and they operate differently. The declared homestead provides greater rights than the automatic homestead. The declared homestead provides protection from a voluntary sale; judgment liens only attach to the equity in excess of consensual liens; and the protections of the declared homestead survive the death of the homestead owner. The proceeds from a voluntary sale may be reinvested

---

[2] The motion for leave to amend the answer, which was filed seven months after the answer was filed, was timely, and there is nothing in the record to suggest that the delay in raising the homestead exemption was in any way prejudicial to Heritage or Billingslea (it is the merit of the defense that is prejudicial, not the time at which it was raised). (§ 473, subd. (a)(1).)

within six months, thus allowing the debtor to invest in another residence. [Citation.] On the other hand, the automatic homestead only entitles the debtor to protection from a forced execution sale. . . . [¶] . . . With respect to a judgment lien, which is created by the recordation of an abstract of judgment, the judgment lien only attaches to the equity in the property above and beyond the recorded homestead exemption and any preexisting liens on the property. . . ." (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 588–589 [5 Cal.Rptr.3d 224], fn. omitted.)

## C.

*Spencer v. Lowery, supra,* 235 Cal.App.3d 1636, the case relied on by the trial court, holds that the automatic homestead exemption afforded by subdivision (b) of section 704.720 does not apply to the proceeds of a trustee's sale under a power of sale in a deed of trust—because a trustee's sale is not based on or in execution of a money judgment within the meaning of section 704.720. (*Spencer v. Lowery, supra,* at pp. 1637, 1639.) The Court of Appeal refused to follow a contrary Ninth Circuit bankruptcy appeals panel interpretation of subdivision (b) of section 704.720 that included all involuntary sales (*In re Cole* (Bankr. 9th Cir. 1988) 93 B.R. 707), finding "the Ninth Circuit's rationale [was] flawed [because] the court never discussed the precise language of the statute which states that the exemption applies only '[i]f a homestead is sold under this division.' The [bankruptcy] court instead assumed that all involuntary sales were within the exemption, and concluded that the category of forced or involuntary sales should be construed broadly [because exemptions] 'are to be interpreted liberally and in the debtor's favor whenever possible. . . .' . . . [¶] While we agree with the policy of liberal interpretation, and see no obvious reason to distinguish for purposes of the proceeds exemption between a foreclosure sale and a sale in execution of money judgment, we must follow the plain language of the statute. Under section 704.720[, subdivision] (b), the proceeds of a sale pursuant to a deed of trust's power of sale are not exempt from execution to satisfy a money judgment." (*Spencer v. Lowery, supra,* 235 Cal.App.3d at p. 1639.)

## D.

*Smith v. James A. Merrill, Inc., supra,* 64 Cal.App.4th 94, the case relied on by the Pearsons, trumps *Spencer* because *Smith* (like our case and unlike *Spencer*) arises in the context of a declared homestead. In *Smith,* the real property in question was owned by Wilkerson, subject to a first deed of trust.[3]

---

[3] *Smith* is far more complicated than *Spencer* or the case before us, and our summary of *Smith*'s facts is limited to the part relevant to this appeal.

In 1981, Wilkerson recorded a homestead declaration. In 1983, Wilkerson borrowed money from Stoneff, and gave him a note secured by a second deed of trust. Before March 1987, Merrill obtained a money judgment against Wilkerson and recorded an abstract of judgment. In September 1987, Wilkerson borrowed money from Kirkland and gave Kirkland a note secured by a third deed of trust. In July 1988, Wilkerson borrowed money from Smith and gave Smith a note secured by a fourth deed of trust. (*Id.* at pp. 96–97.)

In early 1995, Wilkerson defaulted on Stoneff's note, and Stoneff initiated proceedings for a trustee's sale under the second deed of trust. The property was sold to a buyer who assumed the first note and deed of trust, and there was a surplus of about $55,000. Wilkerson then sued Merrill, Kirkland and Stoneff, alleging that Wilkerson's declared homestead precluded Merrill from claiming the surplus based on his judgment lien, and that the surplus should be distributed to the junior lien holders. (*Smith v. James A. Merrill, Inc., supra,* 64 Cal.App.4th at p. 97.) Merrill and Kirkland moved for summary judgment, claiming Wilkerson could not claim a homestead exemption in connection with a trustee's sale and that Merrill was entitled to the surplus fund. The trial court, relying on *Spencer v. Lowery, supra,* 235 Cal.App.3d 1636, granted Merrill and Kirkland's motion on the ground that the homestead exemption does not apply to a trustee's sale. (*Smith v. James A. Merrill, Inc., supra,* 64 Cal.App.4th at pp. 97–98.)

Wilkerson appealed, and the Court of Appeal reversed, noting that a recorded abstract of a money judgment creates a lien that attaches to all interests in the property that are subject to the enforcement of money judgments—except when a declaration of homestead has been recorded on the property before the abstract of judgment is recorded. The focus of the opinion in *Smith* is on the enforcement of Merrill's judgment lien and on subdivision (c) of section 704.950, which provides that "[a] judgment lien attaches to a *declared homestead* in the amount of any surplus over the total of the following: [¶] (1) All liens and encumbrances on the declared homestead at the time the abstract of judgment . . . is recorded to create the judgment lien. [¶] (2) The homestead exemption set forth in Section 704.730 [which sets forth the amount of the automatic homestead]." (Italics added; see also *Teaman v. Wilkinson* (1997) 59 Cal.App.4th 1259, 1264 [69 Cal.Rptr.2d 705].) Section 704.950 was not discussed in *Spencer* because, as noted, *Spencer* addressed an automatic homestead, not a declared homestead.

*Smith* explains the effect of section 704.950, subdivision (c), on a declared homestead: "Before the enactment of the Enforcement of Judgments Law (§ 680.010 et seq.) in 1982, a judgment lien could never attach to

property subject to a prior homestead declaration, regardless of whether the value of the property exceeded the amount of the homestead exemption. [Citation.] The only way for a judgment creditor to reach the excess value in the property above the homestead exemption was to levy execution on the property. [Citations.] By enacting subdivision (c) of section 704.950, the Legislature made it possible for the first time for a judgment creditor to obtain a lien on a declared homestead. [Citation.] That lien attaches to the homestead without the need for any action other than the recording of the abstract of judgment. The amount of the lien is limited, however, to any surplus over the total of (1) any liens and encumbrances existing when the abstract of judgment was recorded, and (2) the amount of the applicable homestead exemption. (§ 704.950, subd. (c).)

"Recent case law suggests a judgment lien does not attach to a declared homestead under section 704.950, subdivision (c), unless and until surplus equity exists. For example, in *In re Jones* (9th Cir. 1997) 106 F.3d 923, the Ninth Circuit Court of Appeals held in a two-to-one decision that, under section 704.950, subdivision (c), '. . . the equity in a homesteaded property is measured at the time a judgment lien is recorded. If, at that time, no equity exists then no judgment lien attaches.' (*In re Jones, supra,* at p. 927.) In *Teaman* [*v. Wilkinson, supra,* 59 Cal.App.4th at pp. 1263–1267], Division One of the Second Appellate District disagreed with the decision of the majority in *Jones* and held a judgment creditor is entitled to reach surplus equity which accrues after the date the abstract of judgment is recorded. [Citation.] Nonetheless, the court suggested that until surplus equity develops, the judgment lien does not attach to the declared homestead. [Citation.]

"In our view, section 704.950, subdivision (c) does not govern when a judgment lien attaches to a declared homestead, but rather governs only the amount of the lien. Construing section 704.950, subdivision (c) to mean that a judgment lien does not attach to a declared homestead unless and until surplus equity exists would be impractical for several reasons. First, the determination of whether surplus equity exists may not occur until years after the abstract of judgment was recorded, as here. . . . Second, whether surplus equity exists depends in part on the amount of the applicable homestead exemption. . . . [¶] . . . [¶]

"Defendants, . . . relying on *Spencer,* . . . contend homestead exemptions do not apply to the proceeds of nonjudicial foreclosure sales. *Spencer* is inapposite. In *Spencer,* the judgment debtors sought to claim an 'automatic' homestead exemption under section 704.720, subdivision (b) to protect the remaining proceeds of a nonjudicial foreclosure sale from execution to satisfy

a money judgment. The court held that section 704.720, subdivision (b) applies only to sales in execution of a money judgment and that a judgment debtor may not claim a homestead exemption under that statute if the debtor's property is sold at a nonjudicial foreclosure sale. [Citation.]

"Unlike the judgment debtors in *Spencer,* Wilkerson is not attempting to claim a homestead exemption under section 704.720, subdivision (b) to protect the remaining proceeds of the trustee's sale from execution by a judgment creditor. Rather, the issue here is to what extent Merrill is entitled to the remaining proceeds of the trustee's sale . . . as the next senior lienholder following . . . Stoneff[]. To determine to what extent Merrill is entitled to the remaining sale proceeds, it must first be determined whether Merrill's judgment lien attached to the property and, if so, in what amount. That determination is governed by section 704.950, subdivision (c), which incorporates the homestead exemption as part of its formula for determining the amount of the judgment lien. *Thus, the homestead exemption is relevant here but only for the purpose of determining the amount of Merrill's judgment lien on the property under section 704.950, subdivision (c).*

"Based on the foregoing, we conclude Merrill's judgment lien attached to the Wilkerson's . . . property in March 1987, when Merrill recorded the abstract of judgment. The *amount* of that lien . . . remains to be determined . . . . Because the amount of Merrill's lien will necessarily be reduced by the amount of the applicable homestead exemption, it follows that Merrill was not entitled to the remaining proceeds of the trustee's sale as a matter of law . . . ." (*Smith v. James A. Merrill, Inc., supra,* 64 Cal.App.4th at pp. 99–102, some italics added, fns. omitted.)

### E.

We agree with *Smith's* criticism of our dicta in *Teaman* and conclude that where, as here, a declared homestead has been recorded before a judgment lien attached, subdivision (c) of section 704.950 incorporates the homestead exemption as part of its formula for determining the amount of the judgment lien. In our view, *Smith* and *Spencer* are factually distinguishable, and any perceived inconsistency between the cases is more imagined than real.

It follows that Heritage's judgment lien attached to the property in May 1998, several months after Pearson recorded his declaration of homestead (in January 1998). For this reason, the Pearsons' motion for leave to amend their answer should have been granted, the judgment in favor of Heritage must be

reversed, and the cause must be remanded to the trial court with directions to determine the validity and amount of the Pearsons' declared homestead.[4]

## II.

The Pearsons challenge the amount awarded to Billingslea for the costs he incurred in enforcing the bail bonds, but do not support their challenge with any reference to the record that would suggest there exists a triable issue of material fact about this point or any other matter relevant to Billingslea's judgment. The challenge has thus been waived. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [19 Cal.Rptr.3d 416].)

## III.

The question remains whether Heritage or Billingslea are entitled to any portion of the surplus.

First, the trial court must determine the validity of the homestead exemption. Second (assuming it is valid), the trial court must determine the amount of the exemption, which may be $50,000, $75,000, or $150,000. (§ 704.730.) If the Pearsons qualify for the maximum exemption (§ 704.730, subd. (a)(3)), there will be nothing left for Heritage, let alone Billingslea. If (as they alleged in their amended answer) the Pearsons qualify for the $75,000 exemption (§ 704.730, subd. (a)(2)), the remaining surplus will be consumed by Heritage's claim. For Heritage and Billingslea to both recover from the surplus, the trial court would have to find that the Pearsons are entitled to only the minimum exemption (§ 704.730, subd. (a)(1)), which would leave about $49,600, which would be sufficient to satisfy both claims ($29,092.57 to Heritage and $18,666.86 to Billingslea). We express no view about the validity or the amount of the exemption, and have listed these variations simply to make it clear that these issues remain to be decided on remand.

---

[4] With regard to Heritage, the Pearsons contend the trial court should have enforced a revoked settlement agreement, pursuant to which Heritage agreed (two days before the ruling on its summary judgment motion) to accept $10,000 to settle this litigation (the settlement was revoked after the motion was granted but before Heritage was advised that the agreement had been signed by Theresa). The Pearsons then filed a motion to enforce the settlement, which was denied, and they now claim that ruling was erroneous. We disagree. The agreement was not enforceable because it was not signed by Pearson, only by Theresa, and she had no authority to sign on Pearson's behalf. A purported power of attorney allegedly executed by Pearson in favor of Theresa in 2003 was neither witnessed nor notarized and thus was invalid. (*Kaneko v. Yager* (2004) 120 Cal.App.4th 970, 979 [16 Cal.Rptr.3d 183].) The Pearsons' alternative argument—that there was an enforceable settlement agreement because Theresa was acting as Pearson's agent—ignores the fact that such an agreement, if proved, would be oral—and thus unenforceable because it was not placed on the record. (§ 664.6.)

## DISPOSITION

The judgments in favor of Heritage and Billingslea are reversed, and the cause is remanded to the trial court with directions (1) to vacate its order denying the Pearsons' motion for leave to amend their answer, (2) to enter a new order granting the motion for leave to amend and filing the amended answer, and (3) to thereafter proceed as appropriate to determine the validity of the Pearsons' homestead exemption and, if it is valid, the amount of the that exemption and the amounts, if any, available to satisfy Heritage's and Billingslea's liens. The parties are to pay their own costs of appeal.

Mallano, Acting P. J., and Rothschild, J., concurred.