**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

In re:  LEAH AHN,

Debtor,

_____

PRIYA SANGER; MICHAEL SANGER,

Appellants,

v.

LEAH AHN,

Appellee.

No.    18-16794

D.C. No. 4:17-cv-05182-JST

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Submitted October 22, 2019[**]
San Francisco, California

Before:  BYBEE, N.R. SMITH, and COLLINS, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Priya and Michael Sanger (collectively, the "Sangers") appeal the decision of the district court affirming in part and reversing in part the bankruptcy court's denial of the Sangers' motion to dismiss and grant of Appellee Leah Ahn's ("Ahn") motion for summary judgment. We affirm.

"We review the district court's decision on appeal from a bankruptcy court de novo" and independently review the bankruptcy court's decision without giving deference to the district court. *Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1172 (9th Cir. 2003).

1.      "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *El Paso City v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.)*, 217 F.3d 1161, 1165 (9th Cir. 2000). The Sangers argue for the first time on appeal that Ahn lacked "statutory standing" to bring her lien avoidance claim (to the extent it challenged the validity of Sangers' judicial lien) under 11 U.S.C. § 522(f)(1)(A).[1]

---

[1] The dissent contends the Sangers raised this argument "at every stage of these proceedings" and points to the Sangers' argument that the bankruptcy court lacked *subject matter jurisdiction* over the declaratory relief claim. *See* Dissent at 7. Indeed, the dissent notes that the Sangers argued that the bankruptcy court lacked "arising under" jurisdiction over the declaratory relief claim, because "nothing within Section 522 . . . creates a cause of action to challenge a judgment lien on the grounds that underlie [the Declaratory Relief Claim]." However, the identified statement explicitly challenged the bankruptcy court's *subject matter*

(continued...)

2

Unlike Article III standing, which is jurisdictional, statutory standing arguments may be forfeited or waived if not raised before the trial court. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1090 (9th Cir. 2012). "A party's unexplained failure to raise an argument that was indisputably available below is perhaps the least 'exceptional' circumstance warranting our exercise of

---

[1](...continued)
*jurisdiction* over the declaratory relief claim. The Sangers did not, however, advance any argument that Ahn lacked statutory standing to bring her lien avoidance claim under 11 U.S.C. § 522. Moreover, to the extent the identified statement may be construed as a *statutory standing* challenge and not a challenge to the bankruptcy court's *subject matter jurisdiction*, the Sangers provided no authority addressing the issue of statutory standing. "The rule in this circuit is that appellate courts will not consider arguments that are not 'properly raised' in the trial courts." *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) (alteration adopted) (quoting *Rothman v. Hosp. Serv. of S. Cal.*, 510 F.2d 956, 960 (9th Cir. 1975)). While no bright line rule exists to determine whether a litigant properly raised an argument below, "[a] workable standard . . . is that the argument must be raised sufficiently for the trial court to rule on it." *Id.*; *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). Here, the single sentence identified by the dissent did not sufficiently raise the statutory standing argument such that the bankruptcy court could rule on the issue. Finally, contrary to the dissent's contention that the bankruptcy court addressed and ruled on the statutory standing issue, the court actually concluded that it lacked "arising under" and "arising in" jurisdiction over the declaratory judgment claim, not that Ahn lacked statutory standing to bring her lien avoidance action.

. . . discretion." *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018).

Accordingly, we decline to consider the Sangers' statutory standing argument.[2]

2. The bankruptcy court had subject matter jurisdiction over Ahn's lien avoidance claim and could properly address the validity of the Sangers' purported judicial lien as a part of that claim. We review whether the lower court had subject matter jurisdiction de novo. *Coyle v. P.T. Garuda Indon.*, 363 F.3d 979, 984 n.7 (9th Cir. 2004).

---

[2] The dissent also suggests that, because Ahn, a pro se litigant, did not raise waiver as a ground for opposing the Sangers' argument, we must address the merits of the Sangers' statutory standing argument. Dissent at 9 n.4. However, we regularly raise and apply, sua sponte, the general rule that we will not entertain an argument raised for the first time on appeal. *See*, *e.g.*, *Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). "This rule serves to ensure that legal arguments are considered with the benefit of a fully developed factual record, offers appellate courts the benefit of the district court's prior analysis, and prevents parties from sandbagging their opponents with new arguments on appeal." *Dream Palace v. Cty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2004). These rationales are applicable to the instant case. Because the Sangers raised the statutory standing argument for the first time on appeal, we are deprived of the benefit of the bankruptcy and district courts' analyses on the issue, and we are reluctant to sanction a course of conduct that encourages litigants to "sandbag" their opponents (especially pro se litigants) with new arguments raised for the first time on appeal. Regardless, the Supreme Court has stated that "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). Here, we exercise our discretion and decline to consider the Sangers' statutory standing argument, which the Sangers failed to raise in both the bankruptcy and district courts.

"Bankruptcy courts have subject matter jurisdiction over proceedings 'arising under title 11, or arising in or related to cases under title 11.'" *Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)*, 729 F.3d 1279, 1285 (9th Cir. 2013) (quoting 28 U.S.C. § 1334(b)). Here, the bankruptcy court had subject matter jurisdiction over Ahn's lien avoidance claim brought pursuant to 11 U.S.C. § 522(f), because it was a core proceeding arising under title 11. *See* 28 U.S.C. §§ 1334, 157(b)(2)(K).

Further, the district court correctly determined that the bankruptcy court could address the validity of the Sangers' purported judicial lien as a part of Ahn's lien avoidance claim, because a court applies state law as the first step in a lien avoidance action to determine whether a valid lien attached to the debtor's property.[3] *See Wolfson v. Watts (In re Watts)*, 298 F.3d 1077, 1080 (9th Cir. 2002).

---

[3] The dissent argues that neither *Wolfson* nor *Wiget v. Nielsen (In re Nielsen)*, 197 B.R. 665 (B.A.P. 9th Cir. 1996) support the view that "the § 522(f) inquiry must begin with an inquiry into the underlying validity of the lien under state law." Dissent at 10. However, contrary to the dissent's protestations, both *Wolfson* and *Wiget* contemplate that the first step in a lien avoidance action must be to determine whether a *valid* judicial lien *attached* to the debtor's property. *See Wolfson*, 298 F.3d at 1080 ("To determine whether or to what extent [the creditor]'s judgment lien could be avoided . . . , the bankruptcy court had to (1) apply California law to determine whether [the creditor]'s *lien attached to Debtors' residence* . . . ." (emphasis added)); *see also Wiget*, 197 B.R. at 667–68 (To determine whether a lien should be avoided under § 522(f), "[t]he first step is to utilize state law in deciding whether *a valid lien* attached to the debtor's

(continued...)

3. The bankruptcy court erred in allowing Ahn's lien avoidance claim to be brought in an adversary proceeding, but that error was harmless. We review the bankruptcy court's interpretation of the Bankruptcy Code and applicable rules of procedure de novo. *See Cal. Franchise Tax Bd. v. Jackson (In re Jackson)*, 184 F.3d 1046, 1050 (9th Cir. 1999).

A lien avoidance proceeding under § 522(f) must be initiated by motion in the bankruptcy case as provided by Rule 9014 and not by adversary proceeding. *See* Fed. R. Bankr. P. 4003(d) ("A proceeding under § 522(f) to avoid a lien . . . under the [Bankruptcy] Code shall be commenced by motion in the manner provided by Rule 9014 . . . ."); *see also Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190–91 (9th Cir. 2011) (holding that contempt proceedings are

_____

[3](...continued)
property." (emphasis added)). It makes sense that a court must first ensure that a valid lien exists, because, if no valid judicial lien attached to the debtor's property, then there is no lien to avoid and the lien avoidance cause of action would be moot. In other words, if there is a question as to a lien's validity, the bankruptcy court would err by assuming the validity of the lien and proceeding to the merits of the lien avoidance action, because there may be no injury in fact that the § 522(f) action could remedy. Therefore, if the validity of a lien is disputed or becomes disputed, the court must determine, as a necessary predicate to resolving the lien avoidance action under § 522(f), whether there is a valid judicial lien to avoid. Thus, the dissent's argument that the district court could not address the validity of the Sangers' lien as a necessary predicate to resolving Ahn's lien avoidance cause of action (when there was a dispute as to the validity of the lien) is not persuasive.

contested matters, not adversary proceedings, and must be initiated by motion in the bankruptcy case, not by adversary proceeding).

Regardless, we review a bankruptcy court's decision to hear a matter that should be brought as a contested matter, but is brought in an adversary proceeding, under the harmless error standard. *Cf. Austein v. Schwartz (In re Gerwer)*, 898 F.2d 730, 734 (9th Cir. 1990) (finding the creditor was not "harmed" by the bankruptcy court's treatment of the issue in a contested matter). Here, the Sangers were not prejudiced by the bankruptcy court hearing the lien avoidance claim in an adversary proceeding, because they had a full opportunity to present their arguments concerning the validity of the lien.

4.      The bankruptcy court did not err in finding that the Sangers' recorded abstract of judgment did not create a valid judicial lien under California law. We "review the bankruptcy court's grant of summary judgment de novo." *Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1040 (9th Cir. 2003) (italics omitted).

"State law controls the validity and effect of liens in the bankruptcy context." *Tr. Corp. of Mont. v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404, 1407 (9th Cir. 1990). California law provides, in relevant part, that an abstract of judgment "shall contain . . . [t]he name and address of the judgment creditor." Cal. Civ. Proc. Code § 674(a)(4). One purpose of this statute is to

7

provide third parties constructive notice of a judgment lien. *Stout v. Gill*, 294 P. 446, 448 (Cal. Ct. App. 1930).

The relevant inquiry, however, is "not whether there was notice of the lien, but whether the [Sangers'] abstract complied with statutory provisions enacted to insure [sic] notice." *Keele v. Reich*, 215 Cal. Rptr. 756, 758 (Ct. App. 1985). The text of section 674(a)(4) is plain and unambiguous and requires the judgment creditor's name and address appear on the abstract of judgment. *See* Cal. Civ. Proc. Code § 674(a)(4). The substantial compliance standard has only been applied where "all of the required data was *included*," and "[n]o court has validated a judgment lien where mandated information was *omitted* from an abstract."[4] *Keele*, 215 Cal. Rptr. at 758–59.

Here, the Sangers' address does not appear on the abstract of judgment and nothing identifies the Sangers as the judgment creditors. Therefore, the Sangers' abstract of judgment does not comply with section 674(a)(4). *See Keele*, 215 Cal.

---

[4] After *Keele*, one state appellate court determined that the omission of mandated information was not fatal to an abstract of judgment where the error was a clerical error that could be corrected. *See Commonwealth Land Title Co. v. Kornbluth*, 220 Cal. Rptr. 774, 781 (Ct. App. 1985). However, *Kornbluth* is not applicable here, because, even if the failure to identify the judgment creditors and the omission of the judgment creditors' address were clerical errors, the Sangers may not correct these errors due to the operation of the discharge injunction. *See* 11 U.S.C. § 524(a); *see also Alcove Inv., Inc. v. Conceicao (In re Conceicao)*, 331 B.R. 885, 892 (B.A.P. 9th Cir. 2005).

Rptr. at 757, 759 (finding an abstract of judgment did not substantially comply with section 674(a) where it omitted the debtor's social security number, which was known to the judgment creditor); *see also Ellrott v. Bliss*, 195 Cal. Rptr. 446, 448 (Ct. App. 1983) (holding an abstract of judgment inadequate and its recording a nullity where "[t]he amount of the judgment [could not] be ascertained from the abstract recorded in th[e] case"); *cf. Longview Int'l, Inc. v. Stirling*, 247 Cal. Rptr. 3d 793, 795 (Ct. App. 2019) ("For a judgment lien to be valid, an abstract of judgment must be properly recorded and contain all the information required by statute.").

The Sangers argue that their abstract of judgment substantially complies with section 674(a)(4), because: (1) although their names do not appear in the box entitled "Judgment Creditor *(name and address)*," their names do appear elsewhere on the abstract of judgment; and (2) the abstract of judgment contains the mailing address of their attorney of record. The Sangers' arguments are not persuasive.

First, the Sangers are listed nowhere on the abstract as the judgment creditors. The Sangers are listed as plaintiffs on the abstract, but that cannot constitute substantial compliance where nothing on the abstract informs third parties with any certainty that the Sangers are the judgment creditors. *See Ellrott*, 195 Cal. Rptr. at 448. Indeed, as the bankruptcy court correctly recognized:

"[t]here could well be other plaintiffs . . . as the space next to the word 'Plaintiff' is not large enough to accommodate more than one or two names. It would not be unreasonable to conclude that the judgment creditor might be another plaintiff, whose name does not appear on the [a]bstract . . . ."[5]

Second, the inclusion of the Sangers' attorney's address on the abstract of judgment does not constitute substantial compliance with section 674(a)(4)'s requirement that the abstract contain the judgment creditor's address. Section 674 requires that abstracts of judgment include "[t]he . . . address of *the judgment*

---

[5] The dissent accuses us of baselessly speculating that the space next to the word "Plaintiff" on the EJ-001 form is not large enough to accommodate more than one or two names, but turns around and speculates that there is "plenty of space on the form, next to and under the names of the Sangers, to list additional plaintiffs (or include 'et al.')." Dissent at 13–14. The dissent misses the point. Nothing on the Sangers' abstract of judgment informs third parties with any certainty that the Sangers are the judgment creditors. Rather, the manner in which the Sangers completed the abstract of judgment requires any third party to assume that the individuals listed next to "Plaintiff" are, in fact, the judgment creditors. The dissent also points to Item 7, which appears in the clerk's portion of the form and provides that "[a]ll judgment creditors and debtors are listed on this abstract." However, reliance on the language in Item 7 forces third parties to further assume the box entitled "Judgment Creditor *(name and address)*" was left intentionally blank and that the judgment creditors' names, in fact, appear somewhere else on the abstract. Under the dissent's view, a third party would be forced to search the abstract, locate the Sangers' names listed as plaintiffs, and assume that the Sangers were, in fact, the judgment creditors when *nothing* on the abstract of judgment indicates that the Sangers were the judgment creditors. In short, the dissent's argument is unpersuasive, because, as the bankruptcy court noted, "[t]he manner in which the Sangers completed their Abstract forces third parties to make too many assumptions."

*creditor.*" Cal. Civ. Proc. Code. § 674(a)(4) (emphasis added). Thus, the plain language of section 674 requires the *address* of *the judgment creditor*, not the address of the judgment creditor's attorney. A contrary finding would run afoul of the *Keele* court's clear directive that "the application of a liberal construction [of section 674(a)] would frustrate legislative intent regarding the specific contents of abstracts."[6] *Keele*, 215 Cal. Rptr. at 759.

Further, substantial compliance "means *actual* compliance in respect to the substance essential to every reasonable objective of the statute." *Assembly v. Deukmejian*, 639 P.2d 939, 946 (Cal. 1982) (quoting *Stasher v. Harger-Haldeman*, 372 P.2d 649, 652 (Cal. 1962)). Here, if the purpose of the statute is to provide third parties the specific information enumerated in section 674(a), which the legislature determined is necessary to ensure constructive notice, third parties should not be required to search the abstract of judgment to locate information that may or may not lead to the mandated information—the judgment creditor's name

---

[6] The dissent argues that we read section 674(a)(4) as requiring the Sangers to list only their "home address and not any other address, such their attorney's address." Dissent at 14. The dissent suggests that "nothing in the statutory text supports that narrow reading." *Id.* at 15. However, the language of section 674 is clear and unambiguous and requires the *address* of *the judgment creditor*, not the address of the judgment creditor's attorney. Therefore, because the abstract *omits* mandated information (the Sangers' address), it does not substantially comply with section 674(a). *See Keele*, 215 Cal. Rptr. at 758–59. The dissent's arguments to the contrary are unpersuasive.

11

and address. An interpretation of section 674(a) that makes the inclusion of mandated information discretionary would introduce uncertainty as to what information is required for a valid abstract of judgment and would "frustrate legislative intent regarding the specific contents of abstracts." *Keele*, 215 Cal. Rptr. at 759. Therefore, the Sangers' abstract of judgment does not substantially comply with section 674(a)(4), because it does not identify the judgment creditors and omits the judgment creditors' address.

**AFFIRMED.**

*Sanger v. Ahn* (*In re Ahn*), No. 18-16794

COLLINS, Circuit Judge, dissenting:

In my view, the underlying validity of the Sangers' lien is not properly before us, but if it were, I would conclude that the Sangers' abstract of judgment was sufficient under California law to create a valid lien. Because the majority concludes otherwise as to both points, I respectfully dissent.

## I

This case comes to us in a singularly peculiar procedural posture, which is a good indication that something is seriously amiss. In the proceedings below, Ahn asserted two claims in her adversary complaint: (1) a declaratory relief claim seeking a declaration that the Sangers' abstract of judgment did not create a valid lien under California law; and (2) a claim that, in the event the lien was valid, it should be avoided under 11 U.S.C. § 522(f) to the extent that it impaired her homestead exemption. The district court reversed the bankruptcy court's grant of summary judgment to Ahn on her declaratory relief claim, holding that the bankruptcy court lacked subject matter jurisdiction over that cause of action. As to Ahn's lien avoidance cause of action under § 522(f), the district court affirmed the bankruptcy court's dismissal of that claim. Thus, the nominal result of the district court's ruling was that Ahn *lost* on both of her causes of action. Nonetheless, somehow the Sangers are the appellants in this court, and Ahn is the appellee. This

1

upside-down posture resulted from the district court's fundamentally flawed

conception of the issues properly raised by Ahn's request to avoid the Sangers' lien

under § 522(f).

Because Ahn has not filed a cross-appeal from the district court's

determination that "the bankruptcy court lacked subject matter jurisdiction over

Ahn's declaratory judgment cause of action," the *only* issue properly before us is

the disposition of Ahn's second cause of action for avoidance under § 522(f).  *See*

*Lee v. Burlington N. Santa Fe Ry. Co.*, 245 F.3d 1102, 1107 (9th Cir. 2001) (party

that seeks "'to change'" the judgment must file a cross-appeal).  The district court

affirmed the dismissal of Ahn's § 522(f) claim based on its conclusions that

(1) such a claim necessarily required the court to address the underlying validity of

the Sangers' lien; and (2) because the Sangers' lien was invalid under California

law, it could not be said to impair Ahn's homestead exemption.  But the district

court's threshold premise was wrong, because a § 522(f) motion is *not* the proper

vehicle for challenging the validity of a lien.[1]  I therefore would vacate the district

---

[1] As the majority correctly notes, a request for *avoidance* of a lien under § 522(f)
must be brought by motion rather than by adversary proceeding.  *See* FED. R.
BANKR. P. 4003(d).  It is not clear to me, however, that the *expanded* § 522(f)
claim that the district court recognized here (which embraces the issue of the
underlying validity of the lien) is within the contemplation of this rule.  But given
that I do not think that this expanded § 522(f) claim exists, I have no occasion to
address whether, if it did exist, it would need to be raised by way of an adversary
proceeding rather than a motion.

2

court's dismissal of Ahn's § 522(f) claim and remand.

## A

In requesting relief under § 522(f), Ahn sought to avoid the lien created by the abstract of judgment on the ground that it purportedly impaired her homestead exemption in light of "the amount of the consensual liens" on the property. Because the bankruptcy court granted declaratory relief holding that the abstract of judgment was invalid under California law, it then dismissed the § 522(f) claim as moot (which it would have been if the lien were invalid). The district court, however, reversed the grant of declaratory relief on subject matter jurisdiction grounds, thereby vitiating the bankruptcy court's mootness ruling concerning the § 522(f) claim. But rather than vacate the dismissal of the § 522(f) claim and remand to the bankruptcy court, the district court instead held that it had authority to address the underlying validity of the lien in the guise of adjudicating the § 522(f) claim. I agree with the Sangers that, in doing so, the district court erred.

The district court proceeded on the premise that "the first step in deciding whether a lien should be avoided is to determine whether the lien is valid." That is wrong. As the district court correctly recognized, a bankruptcy court cannot grant a motion to avoid a lien under § 522(f) when that lien is wholly invalid; in such a case, the motion must be denied as moot. But what follows from that premise is that a § 522(f) motion is *not* a proper vehicle for *contesting* the validity of the

3

underlying lien.  Because a movant cannot properly file a motion for the sole purpose of having it denied, a movant cannot properly use a motion under § 522(f) as a vehicle for challenging the validity of the lien.  Ahn herself seemed to recognize as much, because she filed her challenge to the lien as a freestanding claim separate and apart from her § 522(f) cause of action.  By improperly recasting Ahn's § 522(f) cause of action as *embracing* the underlying validity of the Sangers' lien, the district court effectively placed Ahn in the peculiar position of affirmatively asking for her § 522(f) cause of action to be *dismissed* on the ground that the lien was invalid.  Indeed, after agreeing with Ahn that the lien was invalid, the district court then nominally ruled *against* Ahn by "affirm[ing] the bankruptcy court's dismissal of Ahn's second cause of action."

Despite the obvious procedural oddity, the district court held that it had authority to address the underlying validity of the abstract of judgment because *Wiget v. Nielsen* (*In re Nielsen*), 197 B.R. 665, 667–68 (B.A.P. 9th Cir. 1996), states that the "first step" in the § 522(f) avoidance inquiry "is to utilize state law in deciding whether a valid judicial lien attached to the debtor's property."  But the inquiry *Wiget* undertook is very different from what the district court did here.  It makes sense, in deciding whether a lien impairs the debtor's homestead exemption, to begin by first analyzing how and to what extent, under state law, the lien will attach to whatever equity might be in the relevant property, and that is the inquiry

4

that *Wiget* undertook.  *Id*. at 668–69; *see also Wolfson v. Watts* (*In re Watts*), 298 F.3d 1077, 1080–83 (9th Cir. 2002) (undertaking a comparable inquiry). Reflecting a similar focus, Ahn's argument in her § 522(f) claim was not that the Sangers' lien was invalid but rather that the *amount* of that lien, when added to the amount of the preexisting liens on the property, caused the Sangers' lien to impair her homestead exemption.  Accordingly, neither *Wiget* nor *Wolfson* supports the view that a § 522(f) claim provides an occasion for seeking to declare liens to be completely void under state law based on underlying alleged defects in the creation or recording of the lien.  As the Sangers aptly put the point, § 522(f) "was not enacted to protect the interests of a debtor who argues that a creditor's judgment lien does not exist because it was never properly created under applicable state law."

## B

The majority makes two points in concluding that the district court properly addressed the validity of the lien, but neither is persuasive.

## 1

First, seizing on the fact that the Sangers characterized the point as one of "statutory standing," the majority declares that the Sangers waived any such statutory standing argument by supposedly failing to raise it below.  *See* Mem. Dispo. at 2–4.  This holding is difficult to fathom.  The issue of "statutory

5

standing" is simply "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127–28 & n.4 (2014), and here the majority *does* decide that issue, because it expressly agrees with the district court that "the first step in a lien avoidance action *must* be to determine" the validity of the lien. *See* Mem. Dispo. at 5 n.3 (emphasis added). Consequently, I am at a loss to understand what the majority thinks has been waived here.

Moreover, to the extent that the parties' arguments concerning the elements of a § 522(f) claim have come into sharper focus on appeal, that is attributable to Ahn and to the district court. Ahn's complaint below never took the position that her § 522(f) cause of action for avoidance encompassed any issue concerning the validity of the lien. Rather, Ahn's complaint challenged the lien *only* in her *separate*, first cause of action for declaratory relief. The bankruptcy court followed suit, addressing the validity of the lien only under the guise of Ahn's declaratory relief claim. It was the *district court* that, after concluding it had no jurisdiction over the declaratory relief claim, went on to hold that it could refashion Ahn's § 522(f) cause of action so as to now include the lien-validity issue, *even though the § 522(f) claim had not been pleaded that way in the operative complaint*. Given that the Sangers properly responded to the claims as pleaded, they cannot be said to have waived any legal objection to the district court's

6

reworking of Ahn's § 522(f) claim in its final decision. In all events, given that the majority concedes that the relevant legal issue—*i.e.*, whether the validity of a lien is an element of a § 522(f) claim—is properly before us, there is no basis for asserting that that any legal sub-argument in support of that point (such as the Sangers' "statutory standing" argument) has been waived. *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) (once a claim is properly preserved, "a party can make any argument in support of that claim [on appeal]; parties are not limited to the precise arguments they made below").

Further, the majority is simply wrong in asserting that the Sangers are raising any new issue for the first time on appeal. On the contrary, the Sangers have consistently maintained, at every stage of these proceedings, that Ahn's challenge to the underlying validity of the lien is *not* a part of her § 522(f) claim—indeed, this contention underlay their ultimately *successful* challenge to the lower courts' jurisdiction over Ahn's first cause of action for a declaration that the lien was invalid. For example, in their memorandum supporting their motion to dismiss the operative complaint, the Sangers specifically argued that, because "[n]othing within Section 522 . . . creates a cause of action to challenge a judgment lien on the grounds that underlie Count One," the bankruptcy court lacked "arising

7

under" jurisdiction over the declaratory relief claim.[2] The majority claims that this argument was not sufficiently developed "such that the bankruptcy court could rule on the issue," Mem. Dispo. at 3 n.1, but that is belied by the fact that the bankruptcy court *did* rule on this issue and expressly *agreed with the Sangers* on that point: "The court agrees with Defendants as to 'arising in' and 'arising under' jurisdiction."[3]

In addition, when the bankruptcy court went on to hold that it could assert "related to" bankruptcy jurisdiction (or, alternatively, supplemental jurisdiction) over the declaratory relief claim, the Sangers vigorously challenged that ruling in the district court, arguing that *because there was no legal overlap between the*

---

[2] As the district court summarized, bankruptcy courts have original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Proceedings 'arising under' title 11 involve causes of action created or determined by a statutory provision of that title." *Wilshire Courtyard v. California Franchise Tax Bd.* (*In re Wilshire Courtyard*), 729 F.3d 1279, 1285 (9th Cir. 2013). "Similarly, proceedings 'arising in' title 11" are those not "created or determined by the bankruptcy code, but which would have no existence outside of a bankruptcy case." *Id.* Finally, proceedings are "related to" title 11 if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 1287 (citations and internal quotation marks omitted).

[3] It is likewise irrelevant that this issue—whether a § 522(f) claim includes within it an inquiry into the underlying validity of the lien—arose below in the context of the Sangers' challenge to the lower courts' subject matter jurisdiction over Ahn's declaratory relief action. *See* Mem. Dispo. at 2 n.1. That was the only way it *could* properly have arisen below given that Ahn did not challenge the validity of the lien in her § 522(f) cause of action.

8

*declaratory relief action and the § 522(f) claim*, there was no basis for either form of jurisdiction even though there was "some . . . factual overlap." As a result, the Sangers argued, any challenge to the validity of the lien had to be brought in state court. While the district court ultimately agreed with the Sangers that there was no jurisdiction over the declaratory relief action, it then rewrote Ahn's § 522(f) claim to include *within it* the lien validity issue—even though Ahn herself had not pleaded it that way—and the Sangers have properly objected to that ruling in this court. There was no waiver.[4]

**2**

Second, the majority contends that in any event the district court correctly concluded that the issue of the underlying validity of the lien is an essential part of

---

[4] The majority's invocation of waiver is all the more unwarranted because Ahn herself did not raise waiver as a ground for opposing the Sangers' statutory standing argument. That alone should have been dispositive, because we have repeatedly held that "[t]his court will not address waiver if not raised by the opposing party." *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1994); *see also United States v. Garcia-Lopez*, 309 F.3d 1121, 1123 (9th Cir. 2002); *United States v. Doe*, 53 F.3d 1081, 1082–83 (9th Cir. 1995). The majority nonetheless asserts that its *sua sponte* invocation is appropriate because Ahn, "a pro se litigant," should not be "'sandbag[ged]'" by new arguments and because this court has been "deprived of the benefit of the bankruptcy and district courts' analyses on the issue." Mem. Dispo. at 4 n.2. As the above discussion makes clear, neither of these assertions has any basis in the record. Indeed, we know *exactly* why the district court thought that the § 522(f) claim includes the lien-validity issue. And if anyone was sandbagged, it was the Sangers, who defeated the declaratory relief cause of action in the district court only to be confronted with a transmogrified § 522(f) claim.

9

Ahn's § 522(f) claim. Mem. Dispo. at 4–5. The majority's reasoning, however, does not withstand scrutiny.

The majority claims that applicable precedent establishes that "the first step in a lien avoidance action *must* be to determine whether a *valid* judicial lien *attached* to the debtor's property." Mem. Dispo. at 5 n.3 (emphasis altered). But as explained earlier, the cited cases addressed the entirely separate question of whether and to what extent the lien *attached* to the property in question, and *that* is an essential element of determining whether the homestead exemption in that property has been "impaired" within the meaning of § 522(f). *See Wolfson*, 298 F.3d at 1080–83; *Wiget*, 197 B.R. at 668–69. The fact that *Wiget* (but not *Wolfson*) framed the issue as being whether a "*valid* lien attached," *id.* at 668, does not mean that the § 522(f) inquiry must begin with an inquiry into the underlying validity of the lien under state law. *Wiget* did not involve a challenge to the validity of the lien, nor did the court undertake such an inquiry. *Id.* at 669 ("Neither party disputes that Wiget's lien attached to Nielsen's property in the amount of any surplus equity after deducting all prior liens and the homestead exception. . . . What is disputed is the existence of any surplus equity at all."). *Wiget* thus provides no support for the view that § 522(f) empowers a bankruptcy court to adjudicate the underlying validity of the lien.

The majority is likewise wrong in contending that subsuming validity into a

10

§ 522(f) motion "makes sense."  Mem. Dispo. at 5 n.3.  As the upside-down procedural posture of this case shows, it makes no sense at all.  Under the majority's view, a debtor who wants to invalidate a lien *in toto*—and not merely to avoid the lien to the extent it impairs an exemption—can simply file a § 522(f) motion *and then ask the court to deny her own motion* on the grounds that the lien is wholly invalid.  Nothing in the case law, the statute, or common sense supports such a peculiar procedure.  While it is true that a determination of invalidity would moot a § 522(f) motion, *see id.*, that does not mean that a motion under § 522(f) is *itself* the proper vehicle for making that entirely separate determination.  It clearly is not.[5]

As Ahn herself apparently recognized in how she originally framed her complaint, her challenge to the Sangers' lien "for reasons *outside* the ambit of § 522(f)(1) should [have been] pursued as an adversary proceeding," *In re Ruck*, 451 B.R. 128, 133 n.23 (Bankr. D. Kan. 2011) (emphasis added), rather than as part of a § 522(f) claim (which must be brought by motion).  Here, however, the district court concluded that it lacked jurisdiction over that freestanding claim.  The

---

[5] The majority suggests that Ahn would lack Article III standing to request avoidance if the lien were invalid, *see* Mem. Dispo. at 5 n.3, but that cannot justify what the majority has done here.  Because a plaintiff filing a claim must affirmatively allege and establish her standing to bring it, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), a plaintiff cannot properly file a claim for the purpose of affirmatively asking that it be *denied* on the ground that the plaintiff herself contends that she lacks Article III standing to bring it.

11

district court then erred in concluding, in effect, that Ahn's motion under § 522(f) is a proper vehicle for seeking such a declaration, thereby evading the very limits it had just recognized on its own jurisdiction.

Accordingly, I would not reach the merits of the lien's validity under California law. Instead, I would vacate the district court's dismissal of the § 522(f) cause of action on the merits and would remand the matter to that court with instructions to remand the case to the bankruptcy court with instructions to dismiss that cause of action without prejudice to refiling a proper motion under § 522(f).

## II

Were I to reach the merits, as the majority concludes we may do, I would hold that the Sangers' abstract of judgment substantially complied with the applicable requirements of California law.

The majority concludes that the Sangers' abstract of judgment failed to substantially comply with the statutory requirements that any such abstract must contain the "name and address of the judgment creditor." CAL. CODE CIV. P. § 674(a)(4). I disagree. Section 674 does not require that any particular *format* be used to identify the names and address of the judgment creditors, so long as that information is in fact included in the abstract. It thus is not dispositive that the Sangers, in completing the abstract of judgment form, left blank item 3 ("Judgment creditor *(name and address)*"). The form requires that the lawsuit in which the

12

judgment was obtained be identified (and that was done here), and it is obvious

that the creditors in the *judgment* resolving that very lawsuit against *defendant*

Leah Ahn (who was correctly identified as the judgment debtor) are the *plaintiffs*.

And here, the plaintiffs were properly listed as "Priya Sanger, Michael Sanger."[6]

As for the judgment creditors' address, the Sangers' attorney's address is listed,

and he is expressly identified as the attorney for the "judgment creditor."  Because

"all of the required data was *included*," even though it was listed differently than

the standard form suggested, the Sangers' notice was in "substantial compliance"

with § 674(a)(4).  *Keele v. Reich*, 215 Cal. Rptr. 756, 758–59 (Cal. Ct. App. 1985).

The majority nonetheless concludes that the abstract creates uncertainty as to

who the judgment creditors are because, given that "'the space next to the word

'Plaintiff' [on the form] is not large enough to accommodate more than one or two

names,'" there might be plaintiffs other than the Sangers who were not listed.

Mem. Dispo. at 10 (quoting bankruptcy court ruling).  There is actually plenty of

space on the form, next to and under the names of the Sangers, to list additional

plaintiffs (or to include "et al."), and so any speculation about supposed missing

---

[6] The majority is therefore quite wrong in contending that "*nothing* on the abstract of judgment indicates that the Sangers were the judgment creditors."  Mem. Dispo. at 10 n.5.  The majority's reasoning ultimately rests on the view that the Sangers were *required* to use item 3 (the "box" marked "Judgment Creditor"), *see id.*, but that rigid position ignores, rather than applies, California's substantial compliance standard.

additional plaintiffs is baseless. (The same speculation would equally have applied if the Sangers' names and address had been squeezed into the relatively small space provided in item 3 for listing the names and addresses of the judgment creditors.) The majority claims that I am the one who is speculating when I assert that that there is space to list additional plaintiffs or "et al.," *see* Mem. Dispo. at 9 n.5, but that is wrong. One does not need to take my word for it—here is the box from the Sangers' abstract of judgment:

PLAINTIFF: PRIYA SANGER, MICHAEL SANGER

DEFENDANT: LEAH AHN

On top of all this, the form contains a box (item 4) that is to be checked if additional space is needed for "[i]nformation on additional judgment creditors," and that box was *not* checked. Finally, the *clerk's* portion of the form contains a certification that "[a]ll judgment creditors and debtors are listed on this abstract," and the clerk signed the form, thereby making that certification.

In light of the actual content of the Sangers' abstract of judgment, it would be entirely "'*unreasonable* to conclude that the judgment creditor might be another plaintiff, whose name does not appear on the [a]bstract.'" *See* Mem. Dispo. at 10 (quoting bankruptcy court ruling) (alteration in original) (emphasis added).

As to the address, the majority concludes that "address" means only *home* address and not any other address, such as an attorney's or an agent's address or

14

even a P.O. box. *See* Mem. Dispo. at 10–11 & n.6. But nothing in the statutory text supports that narrow reading. *See*, *e.g.*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("address" simply means "[t]he place where mail or other communication is sent"). Moreover, as the majority notes, substantial compliance is judged by whether the information listed provides "'the substance essential to every reasonable objective of the statute,'" *Assembly v. Deukmejian*, 639 P.2d 939, 946 (Cal. 1982) (citation omitted), and the address provided by the Sangers meets that standard. The only conceivable objective for listing the judgment creditors' address is to provide a means for contacting them if necessary for any purpose related to the enforcement of the judgment. But any "notice, order, or other paper" concerning enforcement of the judgment that is required to be served on the judgment creditor "shall be served *on the judgment creditor's attorney of record rather than on the judgment creditor* if the judgment creditor has an attorney of record." CAL. CODE CIV. P. § 684.010 (emphasis added). Because we construe statutes to harmonize with each other, listing the judgment creditors' attorney's address thus fully satisfies the statutory objective of § 674. The Sangers' listing of their attorney's address substantially complied with the statutory requirement to list their "address."

I respectfully dissent.